### In re STEWART'S WILL.

(*Surrogate's Court, New York County.* February 27, 1889.)

1. WITNESS—TRANSACTIONS WITH DECEDENTS.

   On the hearing of a petition by a legatee to revoke the probate of a will, which provided that if any beneficiary thereunder should directly or indirectly institute

or become an acting party to any proceeding to set aside, interfere with, or make null any provision of the will, his interest under the will should become null, it appeared that after the commencement of the proceeding certain legatees and next of kin of the testatrix, not including the petitioner and other contestants, had executed an agreement, the object of which was stated to be to avoid any controversy between themselves in relation to testatrix's estate, and the obvious purpose of which was to secure their legacies to the legatees signing it, and to the contestants, in case the will should be set aside. *Held*, that the condition in the will against contesting it was valid; that a legatee executing the agreement became thereby a party to the proceeding to set the will aside, thus depriving herself of her legacy in case the will should be sustained, and was therefore incompetent to testify concerning personal communications to her by the testatrix, under Code Civil Proc. N. Y. § 829, which forbids that one shall be examined in his own behalf concerning a personal transaction with a deceased person.

2. SAME.

Such legatee, having affirmed the will in her answer to the petition, was not incompetent as a witness under the pleadings, by virtue of such statute, as her testimony would not be in her own behalf.

On petition by Rosalie Butler to revoke the probate of the will of Cornelia M. Stewart, deceased, under which petitioner was a legatee. The agreement referred to in the opinion was executed by 13 of the 19 legatees in the will, but was not signed by this petitioner and others who had commenced proceedings adverse to the will. The agreement provided that these contestants should still receive their legacies in case the will should be defeated.

*Joseph H. Choate,* (*Treadwell Cleveland,* of counsel,) for petitioner. *Leslie W. Russell,* (*Elihu Root,* of counsel,) for Henry Hilton. *William T. Gilbert,* (*Jasper W. Gilbert* and *Stephen P. Nash,* of counsel,) for the Cathedral of the Incarnation. *Martin & Smith,* (*Michael W. Divine* and *Frederick R. Coudert,* of counsel,) for Sarah N. Smith, Bessie S. White, Ella B. Smith, Kate A. Wetherell, and Louise N. Osborne. *Horace Russell,* (*Daniel G. Rollins,* of counsel,) for Charles J. Clinch. *Shipman, Barlow, Larocque & Choate,* (*Wm. G. Choate,* of counsel,) for Anna C. Clinch, Julia A. Clinch, Emma Clinch, Lillian L. Swan, Helen C. Butler, Maxwell E. Butler, and Virginia Butler. *James C. Smith, in pro. per. Pinney & Sterling,* for Cornelia Stewart Butler. *George M. Pinney, Jr.,* special guardian for Lawrence S. Butler and Charles S. Butler. *Thomas T. Sherman,* for Prescott Hall Butler.

RANSOM, S. The important question which must be decided now, and which has been so ably argued on both sides, with the extraordinary and unusual amount of industry which has been employed by both sides in attempts to ascertain the true rule which governs the rights of the parties here, and which can hardly be magnified, because it reaches beyond the mere question of evidence, is whether Mrs. Wetherell shall be held qualified or not as a mere matter of evidence. It not only has been said by her distinguished counsel, but it is obvious to me, that it may be quite immaterial to her. I have not heard her declare, because, perhaps, she has had no opportunity to make such a declaration, what her own private wishes ever were, or are now, in regard to the admission of this will to probate; but I have heard her father declare in most emphatic terms that it was his wish now, and always had been his wish; it was now and always had been his belief, that the will of Mrs. Stewart was a valid instrument, and ought not to be set aside, and that he had no part or lot in any proceeding of any kind, at least he had never intended to have, to set it aside. However that may be, it seems clear to my mind that it can have no influence at all upon the ruling which must be made on the question submitted. I am gratified that the examination which I myself have made with a good deal of care of this question—and have reduced to a memorandum on some sheets of paper here what my notions are on the question—anticipated all the suggestions that have been made by counsel on the respective sides today, as I think will be observed when I shall read what I have written. Of course I need not say that I have written down the result of my own exami-

nation tentatively, expecting that not unlikely I should be reasoned out of every position I had taken and every conclusion that I had reached; and so I have listened· with edification to the very long and able arguments from gentlemen who never make any other. But I am bound to say that I see no reason now, after the help that I get from the arguments, to change my views as I have recorded them. I was attracted rather intensely to an admission made by the counsel for Mrs. Wetherell in his argument, to the effect that, in in his view, the condition contained in the seventh paragraph of the first codicil, which is called the *in terrorem* clause, is valid, and one that the testatrix had a right to annex to the legacy. I had supposed from my examination that the gentlemen on the contestants' side of this case (and I don't know that I should rank Mrs. Wetherell, certainly not as of record, upon the contestants' side,) but that the gentlemen on the side supporting the witness, and arguing for her qualification, should have admitted the validity of that condition. Judge Choate distinctly repudiates that notion, and so does Mr. Cleveland. We have, then, the interesting and rather novel condition of the lady's counsel, speaking for her, admitting the validity of the condition which she, it is said, has violated, and if it be true that she has, as matter of law, violated that condition, she stands here to-day, admitting that she has lost her rights under the will. It is conceded, and, while these preliminary remarks may be apparently repeated in substance, still they are remarks which come to me from the argument which has been made to-day, and I desire to make them preliminary,—it is admitted, although not expressly, in his argument, by Judge Choate that, if there had been a gift over, then the condition would be valid; that there being no gift over, the condition is invalid. He would undoubtedly have admitted that if this benefaction, or a benefaction under this will, to Mrs. Wetherell had been of real estate, or of interest therein, then the condition, as it reads without any gift over whatever, would have been valid, and I should have been glad to have heard him define to me what reason there can be in law or sense for a distinction between a condition valid as to a devise of real estate and the same words of condition invalid as to a bequest of personal property.

From my reading of this agreement it seems to me that it might be plausibly argued that the legacy to Mrs. Wetherell, although personalty, the benefaction to her, her interest, her rights under the will, are beyond the mere legacy, and it includes and involves her rights in real estate; because a residuary half of this estate, after the necessary expenditure on the cathedral, may, the entire body of it, go to her, and that must necessarily include an interest in real estate, and, if that be true, then there is no question but what this condition in the seventh paragraph of this codicil is valid as to that, under the English rule. And again, in that same connection, the language of the seventh clause, which is so familiar to all that perhaps I need not read it, or any part of it, but for the sake of great certainty for the point that I make, I will read a few words. Mrs. Stewart says: "Such act or proceeding shall operate and be effectual as a release of all claim on the part of such heir, next of kin, or legatee to any part of my property or estate, and any provision of my will in favor of such party I do hereby abrogate, annul, and make void." Well, it occurs to me, and has all along the examination of this question, and during the argument, whether a gift over must necessarily be found in such a condition in express words; whether you may not look for the gift over by direct implication, and necessary and obvious inference, from the words used. And, if so, the point is suggested to my mind whether, under this clause, such benefaction under this will as a legatee, or a person receiving something under it, shall go in case of a violation of this condition to the residuary estate; and is not that what is clearly to be implied and inferred from the condition itself, and would that be a gift over, and thus make the condition valid without regard to the use of express words to define such a gift?

I now come to the examination I made of the question and reduced to writing. Mrs. Wetherell is a legatee named in the will, and by its provisions is entitled to receive a legacy of $200,000. By her answer in this proceeding she affirms the will and codicils, and ranges herself on the side of the proponents, who have duly proved the will, and procured a decree of this court admitting it to probate, and which it is now sought to annul as provided by statute. The legal consequence of the petition is to compel the proponents to again establish the due execution of the will by a competent testatrix at the time of its execution, without fraud or undue influence. Mrs. Wetherell is put upon the stand by the contestants, and sworn as a witness for them, to sustain their contention that the will was obtained by fraud and undue influence. Upon a question being propounded to her by the contestants' counsel, which calls for an answer that will disclose a personal communication to her from the testatrix, it is objected by the proponents' counsel that she is disqualified by section 829 of the Code, which forbids that a party shall be examined as a witness in his own behalf or interest concerning a personal transaction or communication between the witness and the deceased person. Examination by counsel for the proponent of the witness on her *voir dire* discloses the fact that Mrs. Wetherell entered into an agreement in writing several months after the commencement of this proceeding, and after the filing by her of her answer herein, and which agreement is in evidence as exhibit ——, and dated May 21, 1888, with several persons, heirs at law and next of kin and legatees of the testatrix, with the door left open for the admission of the petitioner at any time she chooses to come in, which agreement relates to the rights of the parties thereto severally under the will.

It is claimed by the proponents' counsel that the effect of this agreement in law is to disqualify Mrs. Wetherell as a witness in regard to any personal communication with the testatrix, and hence the objection. By the seventh article of the first codicil the testatrix expressed in plain language her intention that as a condition to the payment of this legacy to Mrs. Wetherell she should not, directly or indirectly, institute or become an acting party to any proceeding to set aside, "interfere with," or make null any provision of the will or the codicils, and that any such act or proceeding by her should deprive her of the legacy, the provision for which the testatrix, in such contingency, abrogated, annulled, and made void. *First.* Has Mrs. Wetherell violated this condition of the will? *Second.* Is this condition valid? Disregarding this condition, the petitioner, a legatee, has, on her own petition, instituted this proceeding to revoke the probate of the will, and the effect of her action, if she succeeds, will be to "set aside, interfere with, and make null" its provision. Under the pleadings herein Mrs. Wetherell sustains the will, and hence is not disqualified as a witness under the section of the Code referred to, to be examined as a witness in aid of the contest, because any testimony she might give of personal communications with the testatrix would not be in her own behalf or interest. Her answer, under her own oath, discloses that in her view the legacy to her was not bequeathed by an incompetent testatrix, nor by one unduly influenced, nor by one under restraint, or the victim of fraud; but, on the contrary, it was the voluntary, free, unrestrained act of a person competent to make a will. She, also, in her answer, by words apt for that purpose, affirms the same thing in regard to all other provisions of the will.

Several months after this contest had actually begun, and much testimony had been given, Mrs. Wetherell and other legatees and heirs at law entered into the written agreement of May 21, 1888, the object of which is stated to be in the agreement itself as follows: "Of avoiding, as far as may be, any controversy, or occasion of controversy, between themselves in relation to any of the property or estate which the said Cornelia M. Stewart, at the time of her death, was possessed of, or in any way entitled to." This agreement

was secret, unknown to the leading counsel for the petitioner, until the day its existence was discovered on the examination in court here of one of the parties thereto, the sister of Mrs. Wetherell, and also a legatee for the same amount. It seems certain to me that in order to procure the testimony of Mrs. Wetherell in aid of the petitioner's cause, to-wit, the setting aside, interfering with, and making null the will of Mrs. Stewart, this agreement of intended indemnity was executed, and its obvious purpose was to assure to Mrs. Wetherell the full amount of her legacy if the will was "set aside," and therefore any pecuniary interest she had in sustaining the will became perfectly protected, and the interest she had grounded on her natural sympathies for the petitioner and her advisers and friends, her love and esteem for her and for them might then be safely manifested. The question as to the effect of this agreement upon Mrs. Wetherell's right to receive her legacy in the event that the will is sustained in this proceeding seems to be the test of her qualification as a witness. Has she, directly or indirectly, instituted any proceeding to set aside, interfere with, or make null any provision of the will, or has she directly or indirectly become an acting party for such purpose? If she has, then she may have forfeited or waived her legacy, and her only interest is in setting the will aside, as it is very plain she can receive nothing under the agreement unless the will is set aside, and by the will I mean always the will and the codicils thereto.

In this connection we perceive the hidden meaning of this agreement, its real purpose, as it seems to me, namely, the pooling by all of their interests, with a perfect scheme of mutual protection in any emergency, and for the attempted evasion of the statute now invoked, and also to defeat the condition imposed by the testatrix, as stated in the seventh article of the first codicil. The plain intent of this agreement is to unite all the signers, legatees, heirs at law, and next of kin, under the name of Rosalie Butler, in aid of the pending proceeding to set aside the will. To my mind it is perfectly plain that this proceeding was really instituted by Rosalie Butler in behalf of herself and the signers of this agreement, and the evidence of that fact is the agreement itself. At the date of the agreement the parties thereto became acting parties to this proceeding to set aside and make null the will, and whether they were directly or indirectly acting is not material to decide. They certainly did one or the other. Hence, we must ascertain the legal effect of article 7 of the first codicil upon the rights of these persons in the event that this will is sustained. The third article of the agreement was intended to bind all the parties to an utter disregard of the trust to Hilton and his successors, so far as any benefits might come to them, or either of them, by the execution of the trust. This article is equivalent to a release by the signers who are not heirs at law and next of kin of the testatrix of any benefits they may ever be entitled to receive under the terms of the trust, by the exercise in their favor of the discretion vested in the trustee, and, further, a binding agreement on their part to pay over to the heirs at law and next of kin any sums they might receive from the trustee. The scheme of this article is that the residuary half of the estate devised to Hilton in trust shall go to the heirs at law and next of kin as in case of intestacy, and, at least, to the entire extent of any benefits any or either of these persons, whether heirs at law and next of kin or not, may have coming to them from the trustees. They repudiate the trust and become parties to a proceeding to make null the trust provision of the will, or, at least, "to interfere" with that provision, and thus they violate the condition of the seventh article of the first codicil.

The legal effect of this agreement upon the persons who executed it is the relinquishment by them of all their rights dependent upon any of the provisions of the will. They have elected to disregard the will. In legal effect they refuse to accept the benefactions bestowed upon them, preferring rather to rely upon this agreement. It is a fundamental principle that no one is allowed to dispute

.a will under which he takes a benefit. The rule in England cannot, it seems to me, be regarded as settled yet as to conditions against disputing a will. The doctrine of many cases there may seem fairly to establish the rule that the condition of not disputing a will by a legatee is to be regarded as *in terrorem* only unless there be a gift over, but such does not seem to me to be the rule in this country. Any reason for the distinction made between bequests and devises I am unable to adopt as substantial, nor have I been able to find any American authorities approving the English rule, if, indeed, we may say there is a rule on the subject in that country. American authorities the other way can be multiplied, and they are to be found in the decisions of the courts of last resort in several states. The rule in Canada seems to be settled in favor of upholding the legality of such a condition annexed to a bequest. A standard authority in this country enlightens me as to the true rule. I quote from Judge Redfield on Wills, p. 679, (3d Ed.,) and this quotation contains what I commit myself to as the rule in America upon this subject. He says: "The rule of the English law as to conditions against disputing the will, annexed to some bequests, seems to be in a most absurd state of confusion. It is held such a condition is void as to personalty unless the legacy be given over in the event of failure to perform the condition, but that such a condition is entirely valid as to real estate, whether there be any gift over or not; and it is agreed that there is no substantial ground for any distinction in this respect between real and personal estate. Hence, we assume that in this country any such condition which is reasonable, as one against disputing one's will surely is,—as nothing can be more in conformity to good policy than to prevent litigation,—will be held binding and valid; and, as before stated, a condition avoiding the bequest upon the donee becoming a nun is valid, and will be enforced." That quotation is precisely accurate from Judge Redfield's work on the Law of Wills.

I conclude, therefore, that Mrs. Wetherell, by her agreement of May 21, 1888, has deprived herself of her legacy, in the event the will is sustained, and therefore her interest lies with the contestants and not with the proponents. I hold that she cannot be examined as a witness concerning a personal transaction or communication between her and the testatrix.