IOWA L. MORAN, as Executrix of the Will of SELBY B. MORAN, Deceased, Appellee, v. GEORGE W. MORAN, Appellant.

Same Plaintiff, Appellee, v. FRANK B. MORAN, Appellant.

Same Plaintiff, Appellee, v. VIRGINIA C. RICHARDS, Appellant.

**Contracts:** PLACE OF CONTRACT: LIMITATION OF ACTIONS. The place where the parties agree upon the terms of a contract or where the same is reduced to writing is not necessarily the place of contract; the intention of the parties in this regard will prevail, and such intention may be found from surrounding circumstances; as when a resident of another State as a result of correspondence regarding a loan of money, executed and forwarded his promissory note therefor to a resident of this State by mail, on receipt of which a draft was returned as agreed, the transaction is held to constitute an Iowa contract, and upon maturity of the note unpaid it may be sued here at any time within the statutory period, although barred by the statute of the foreign State.

**Negotiable instruments:** DELIVERY. Ordinarily the deposit of a note in the mails operates as a delivery at the place of mailing. This rule however is not of universal application, but the question of delivery may depend upon the nature of the transaction and intent of the parties.

**Same:** LIMITATION OF ACTIONS. A cause of action on a promissory note accrues upon maturity of the note and default in payment, but it arises and has its origin in the transaction out of which it grew; the terms "accrues" and "arises" as used in the statute of limitations not being synonymous; so that where a cause of action on the note arose within this State, although fully barred

by the statute of another State, the right to prosecute here is governed by the exception contained in Code, section 3452, and action thereon may be brought within ten years from maturity.

**Wills:** PROVISION AGAINST CONTEST: VALIDITY: PUBLIC POLICY. The provisions of a will that any legatee who shall contest the will shall forfeit his legacy, and that the same shall then pass to another are not invalid as contrary to public policy, either as respects real or personal property, and irrespective of the ground or cause of contest.

**Same:** FORFEITURES: "CONTEST" DEFINED. The term "contest" as used in the provision of the will above referred to is not to be given any technical meaning but is held to include proceedings by legatees, who were heirs of the testator's first wife, to take out from the operation of the will an essential part of the estate, on the theory that it descended to them as heirs of their deceased mother, and that testator acquired title through a forged deed.
Evans, C. J., dissenting.

*Appeal from Hardin District Court.*—Hon. C. G. LEE, Judge.

WEDNESDAY, NOVEMBER 17, 1909.

THE opinion states the case.—*Affirmed.*

*Dawley & Wheeler* and *H. A. Huff,* for appellants.

*Albrook & Lundy,* for appellee.

WEAVER, J.—In February, 1904, Selby B. Moran, a resident of Hardin County, Iowa, died testate, leaving surviving him Iowa L. Moran, his widow, and Selby A. Moran, Lee Moran, Virginia Richards, Frank Moran, George W. Moran, and Eldon Moran, children by a former wife, his only heirs at law. His will, which was duly probated, consists of seven paragraphs, as follows:

Paragraph 1 is formal only, and need not be here set out.

Paragraph 2 gives to his wife in her own right all his personal property, moneys and credits.

Paragraph 3 is in the following words:

I devise, give, grant and bequeath unto my said wife, I. L. Moran, in fee simple, my home farm upon which I now reside and described as follows: The south half of the northwest quarter and the southwest quarter of the northeast quarter of section seventeen, township eighty-seven, range nineteen west of the 5° P. M., in Hardin County, State of Iowa, to have and to hold the same as her own absolutely.

Paragraph 4 gives to his wife the use of all the rest of his real estate for one year after the testator's death.

Paragraph 5 directs his executrix to sell all the real estate not devised to his wife for the best obtainable cash price and to distribute the proceeds, as follows:

She shall pay to my son Selby A. Moran the sum of five Hundred Dollars, to my son Lee Moran the sum of five hundred dollars, to my daughter Virginia Richards the sum of five hundred dollars, to my son Frank Moran the sum of five Hundred dollars, to my son George W. Moran the sum of five hundred dollars, and shall pay to my son Eldon Moran the remainder of the net proceeds of the sale of said described premises.

Paragraph 6 is in the following words:

I further declare and provide that in case any of the legatees named as beneficiaries in this instrument shall contest the same, such beneficiary or legatee, or beneficiaries or legatees, making such contest shall forfeit thereby his right to any portion of my estate and the provision or legacy provided in this will for such beneficiary or legatee or legatees shall by such act become the property of my said wife, I. L. Moran, absolutely in her own right.

Paragraph 7 appoints Iowa L. Moran the executrix of his will without bond.

After the probate of said will, Virginia Richards, Lee Moran, Frank Moran, and George W. Moran united in beginning an action in equity in the district court of Hardin County against Iowa L. Moran, alleging that the plaintiffs therein were heirs at law of Miranda Moran, first wife of Selby B. Moran, who died intestate in the year 1885, seised of a tract of land, which Selby B. Moran afterward pretended to devise to his second wife by the third paragraph of the will hereinbefore referred to, when, in truth and in fact, said Selby B. Moran had no right, title to, or interest in said lands which he could lawfully devise to any one, and that his will by which he attempted to devise or dispose of said lands was of no force or effect against said plaintiffs, who inherited the same from their mother. This claim was based upon the allegation that the lands had been conveyed by a former owner to the said Miranda Moran by a good and sufficient warranty deed, and that Selby B. Moran, without her knowledge and consent, had fraudulently erased her name as grantee in said deed, and inserted his own in place thereof, which forged and altered deed he caused to be recorded, and, after her death in ignorance of said wrong, he had fraudulently procured a decree of the district court quieting his title in said lands against her children, all of whom by his fraud and concealment had been kept in entire ignorance of their rights in the premises until after his death. Upon these allegations, they sought to have the will adjudged inoperative and of no effect so far as the same purported to devise or dispose of any of the lands alleged to have been owned by Miranda Moran and their own title quieted thereto against the said Iowa L. Moran. The litigation thus begun terminated in a decision by this court sustaining the devise to the second wife. *Richards v. Moran,* 137 Iowa, 220.

While the action above referred to was still pending, Iowa L. Moran, as executrix of her husband's will, began

an action against George W. Moran to recover the amount
of a promissory note given by him to Selby B. Moran
July 25, 1896, due six months after date, for the sum of
$100, with interest at seven percent. By a second count
of her petition therein she pleaded the provision of the
will of Selby B. Moran for a legacy of $500 to the said
George W. Moran, and asked that the amount due the
estate upon the said promissory note be indorsed and al-
lowed as a payment or set-off against said legacy. By a
later amendment to her petition she further set up the
sixth paragraph of the will, providing for a forfeiture of
all benefits under said will by any heir contesting said
instrument, and alleged that said George W. Moran, by
uniting in the action above mentioned to dispute the effec-
tiveness of the provisions of said will, had forfeited all
right to demand and recover said legacy, and asked that
it be so adjudged and decreed by the court. Said Iowa
L. Moran also instituted other proceedings against Vir-
ginia Richards and Frank B. Moran to have their legacies
under the will of Selby B. Moran declared forfeited, alleg-
ing the same grounds therefor as were assigned by her in
her petition against George W. Moran. To the claim on
the promissory note George W. Moran answered denying
the execution of the instrument sued upon. In a second
count he alleged that the note was made and delivered in
the state of Michigan, where he then lived and has ever
since resided, and that plaintiff's cause of action on said
instrument is fully barred by the statute of limitations of
that State, as well as by the statute of limitations of this
State. George W. Moran, Frank B. Moran, and Virginia
Richards, severally entered their denial of the alleged for-
feiture of their right to demand and receive the legacies
provided for them by the will of Selby B. Moran. On
the trial the executrix, in support of her claim that de-
fendants had forfeited their legacies under the will, in-
troduced the records and files of the action in equity

hereinbefore referred to.  In support of her claim upon
the promissory note of George W. Moran, she introduced
the instrument, which is in the following form: "$100.00.
July 25th, 1896.  Six months after date I promise to pay
to the order of S. B. Moran one hundred dollars at seven
percent interest.  Value received.  Geo. W. Moran."  The
defendant, George W. Moran, offered evidence tending to
disprove the genuineness of the signature to said note,
and plaintiff in rebuttal offered other evidence tending to
sustain it.  It was also shown without dispute that by the
statutes of Michigan actions upon promissory notes are
barred if not commenced within six years after the cause
thereof accrues.  On the record thus made the district
court found the plaintiff entitled to recover from George
W. Moran the amount of the note sued upon, and entered
judgment accordingly.  Upon the issues involving the al-
leged forfeiture of the legacies to George W. Moran, Frank
B. Moran and Virginia Richards the court further found
that the prosecution of the action first above mentioned
was a contest of the will within the meaning of that term
in the sixth paragraph thereof, and that the legacies which
would otherwise have been payable to said George W.
Moran, Frank B. Moran and Virginia Richards were
thereby forfeited.  The defendants severally appeal.
Though the issues between plaintiff and the several de-
fendants were kept distinct and separate in the court below,
we think the appeals can be disposed of without confusion
in a single opinion.

The appeal of George W. Moran from the judgment.
rendered against him on the promissory note is submitted
upon the single proposition, variously stated, that the
trial court erred with respect to the opera-

1. CONTRACTS:
place of
contract:
limitation of
actions.

tion of the statute of limitations.  Our gen-
eral statute governing the time within which
actions may be commenced provides that
claims for recovery upon promissory notes may be begun

at any time within ten years after the "causes of action accrue." Code, section 3447. By Code, section 3452, it further provides that: "When a cause of action has been fully barred by the laws of any country where the defendant has previously resided, such bar shall be the same defense here as though it has arisen under the provisions of this chapter; *but this section shall not apply to causes of action arising within this state.*" The note in suit fell due December 25, 1896, and action was begun thereon November 3, 1906. It was therefore barred by the Michigan statute before the death of Selby B. Moran, and whether it is barred in this State depends upon whether it falls within the general provision of section 3452 above quoted, as contended by appellant, or within the exception mentioned in the italicized clause thereof as contended by the appellee. As bearing upon the question whether the note is an Iowa contract, we may say that the evidence fairly tends to show that in the summer of 1896 the appellant applied to his father by letter to borrow $100. Appellant was then at his home in Detroit, Mich., and his father at his home in Eldora, Iowa. In response to this request, Selby B. Moran wrote to appellant under date of July 23, 1896, saying that he had no money himself, but after some effort had found where he could borrow $100. He then proceeded: "Now, George, write me as soon as you get this, and let me know if that $100 will answer your purpose, and, if you want it, you can send your note to me and I will get it and send you draft on N. Y. for $100 for six months at seven percent." It would appear that immediately upon receipt of this letter appellant executed the note as directed and forwarded it to his father, who then remitted the promised amount. Under such circumstances, we are quite clear that the note should be regarded as an Iowa contract, even though it was, in fact, written and signed in Michigan, and forwarded to the payee by mail. The place where the parties agree upon

the terms of their contract or where the written evidence of the agreement is prepared is not necessarily the place of contract within the meaning of the law. The intention of the parties with respect thereto will ordinarily prevail, and that intention may be found from the circumstances surrounding the transaction. *Bigelow v. Burnham,* 83 Iowa, 120; *Id.,* 90 Iowa, 300; *Bell v. Packard,* 69 Me. 105 (31 Am. Rep. 251); *Lawrence v. Bassett,* 5 Allen (Mass.), 140; *Barrett v. Dodge,* 16 R. I. 740 (19 Atl. 530, 27 Am. St. Rep. 777).

It is said, however, on authority of the case last above cited, and *Tharp v. Thero,* 112 Iowa, 573, that the contract is completed when the delivery of the note is complete, and that the deposit of the note in the mail operates as such delivery at the place of mailing. That this proposition is correct under some, and perhaps most, conditions will be admitted, but it is certainly not a rule of universal application. Whether the contract is completed by the mailing of the note depends upon the nature of the transaction and the intent of the parties. In the *Tharp* case the debt had been contracted long before the note was given, and the defendant, a resident of Colorado, proposed to plaintiff, a resident of Iowa, to transfer to him in settlement of the claim the note of a third person, and to give his own note for the remainder. The offer was accepted and defendant made his note in Colorado, payable in Iowa, and sent it to plaintiff by mail. After the right of action had been barred by the Colorado statute, suit was brought on the note in this state, and we held that, if defendant deposited the note in the post office to be transmitted to plaintiff, "intending such deposit as a delivery," it was a sufficient delivery in law to make the note a Colorado contract, and in such case the bar of the Colorado statute would operate also as a bar to the action in this state. In the instant case, however, there was no antecedent debt. The

2. NEGOTIABLE INSTRUMENTS: delivery.

direction given by Selby B. Moran to the appellant was to make the note and send it to him in Iowa, and, on its receipt, he would obtain and remit the money. The making and mailing of the note were the incipient steps in a transaction which was to be completed in Iowa after the receipt of the paper here. No obligation rested upon the payee until that paper came to his hands. The appellant made use of the postal service as his own agent or convenience in bringing about the desired loan. The case is not materially unlike *Bell v. Packard, supra,* decided by the Supreme Court of Maine. There the plaintiff, a resident of Maine, holding an overdue note of the defendant, a resident of Massachusetts, wrote the latter, offering to surrender the note to him on delivery of a new note with surety. A new note was accordingly made and sent to the plaintiff by mail, and it was held to be a delivery in Maine and governed by its laws. It has also been held that a contract made by correspondence or negotiations between parties residing in different States is to be treated as a contract in the State where the last act is done, which is necessary to give the contract validity. 3 Page on Contracts, section 1718; *Ivey v. Land Co.,* 115 Cal. 196 (46 Pac. 926). Applying this test to the case before us, the note must still be held an Iowa contract, for it had no validity and represented no obligation to pay until presented to the payee here and the promised loan had been made.

If we understand counsel correctly, they further contend that, even conceding the contract to have been completed in Iowa, yet, as the appellant was a resident of Michigan when the note fell due, the cause of action is one arising in that State, and not in Iowa. The argument is that no cause of action arises on a note until due, and it arises then only in the jurisdiction where the maker may then be sued. From this premise the conclusion is sought

3. SAME: limitation of actions.

to be reached that as appellant was and at all times since the giving of the note has been in the State of Michigan, and might have been sued in the courts of that State immediately upon the maturity of the debt, the cause of action can not be said to have "arisen" in Iowa. Of the authorities cited in support of this provision none is directly in point upon the question as here presented. We must concede, however, that some of the reasoning employed in *Luce v. Clarke,* 49 Minn. 356 (51 N. W. 1162), and *Hyman v. McVeigh,* 87 Ill. 708, an unreported Illinois case, cited in *Strong v. Lewis,* 204 Ill. 35 (68 N. E. 556), goes far to sustain the appellants' theory; but in neither case was the court considering the effect of ·a foreign statute of limitations upon a domestic contract, though it does go to the extent of saying in effect, that a cause of action "arises" within the meaning of the statute of limitations in the jurisdiction where the defendant resides when the contract becomes enforceable by suit. We are unable to find such meaning in the language of our statute, and think the course of our own decisions compels us to another interpretation. As we have already noted, our general statute of limitations provides that "actions may be brought within the times herein limited respectively after their causes of action accrue." After further providing for giving effect to foreign statutes of limitations, it excepts therefrom "causes of action arising within this State," thus leaving this cause of action to be governed solely by the limitations of our own State. While technically speaking there is perhaps no such thing as a "cause of action" on a promissory note until it is due and the holder is entitled to sue thereon, there is a sense in which such cause exists from the moment when the promise becomes a legal and binding obligation. True, it is an imperfect or inchoate right, but it is none the less real. The right to institute action "accrues" when by maturity of the note and default in payment the holder

may maintain a suit thereon, but it "arises" or has its
origin in the transaction which brought the obligation
into existence. The two phrases—"cause of action ac-
crues" and "cause of action arises"—are both used in
our statute, and in a manner which clearly indicates an
attempt to express different ideas, and the distinction we
have above indicated effectuates what we think was the
apparent legislative purpose. We are not without pre-
cedents in point. In *Emerson v. Steamboat,* 10 Wis.
433, it is said: "A cause of action may be said to
arise when the contract out of which it grows is en-
tered into or made." Also in *Steele v. Commissioners,*
70 N. C. 139, a statutory phrase, "where the cause of
action arose," was held to mean where the debt was con-
tracted, and not the place of failure to pay the debt. In
*Lloyd v. Perry,* 32 Iowa, 144, the defendant executed
a note in Ohio to a citizen of that State, but moved to
Iowa before the debt was due. He remained here two
years, during which time the note matured, then removed
to Kansas, living there long enough for the statute of
that State to bar an action in its courts upon this obli-
gation. Returning then to this State, suit was brought
on the note, and he set up in defense the bar of the
Kansas statute. The plaintiff attempted to avoid the ef-
fect of this plea by arguing that the cause of action
"arose" in this State during the defendant's former res-
idence here; hence he could not avail himself of the de-
fense of the statute. It will be seen at once that this
objection was perfectly sound if appellant's theory of the
construction of the statute is correct. But the court re-
fused to so rule, holding that "the cause of action did
not arise in this State." The last clause of Code, sec-
tion 3452, "but this section shall not apply to causes of
action arising within this State," had its origin in chap-
ter 167, Acts 13th General Assembly. The court had
occasion to cite that provision in *Thompson v. Read,* 41

Iowa, 48, and in construing its terms Mr. Justice Beck, writing the opinion, says: "It is presumed that the language was intended to apply to actions arising upon contracts executed in this State, and it is so concluded." The same effect is given the statute in *Goodnow v. Stryker,* 62 Iowa, 224, and *Bradley v. Cole,* 67 Iowa, 652. It follows from these conclusions that the trial court did not err in overruling the appellant's plea of the statute of limitations.

II.    We now come to the question of chief importance in this controversy—the rights, if any, of these appellants under the will of Selby B. Moran.    The first

4. WILLS: provision against contest: validity: public policy.

proposition of 'counsel is that the provision contained in the sixth clause of the will is void and of no effect, as being contrary to public policy.    Testamentary provisions of this kind have received judicial consideration both in England and the United States.    Upon some phases of the discussion there is no little confusion in the decisions. In this country, however, we find no authority going to the extent of holding that a testator may not under any circumstances impose upon the acceptance of his bounty a valid condition against an attack upon his will by the' legatee.    Without taking time to cite the cases, it may be said that some courts incline to the view that such conditions are valid only in cases where the testator names some third person to receive the legacy in the event of a breach of the condition by the legatee first named.    Others sustain all such conditions attached to devises of real estate, but hold there must be a gift over upon its breach in order to make valid a condition of the same kind attached to a bequest of personalty.    A few courts have held the condition inoperative where the beneficiary has probable cause for the contest of the will, while still others reject all these distinctions as arbitrary, and hold the condition valid and enforceable in all cases, whether the

gift be of realty or personalty, and without regard to the cause or ground of contest. The latter view appears to be the one now generally held, and to our minds is most in consonance with reason and sound principle. *Bradford v. Bradford,* 19 Ohio St. 546 (2 Am. Rep. 419); *Thompson v. Gaut,* 14 Lea (Tenn.) 310; *In re Bratt,* 10 Misc. Rep. 491 (32 N. Y. Supp. 168); *Hoit v. Hoit,* 42 N. J. Eq. 388 (7 Atl. 856, 59 Am. Rep. 43); *Donegan v. Wade,* 70 Ala. 501; *Sackett v. Mallory,* 1 Metc. (Mass.) 355.

The objection that such conditions are against public policy has frequently been made; but we do not find that it has ever been upheld by any court of this country. In *Mallet v. Smith,* 6 Rich Eq. (S. C.) 12 (60 Am. Dec. 107), the only case cited by counsel for the appellant, the writer of the opinion, Chancellor Wardlaw, expressing his individual opinion, favors the view that public policy is opposed to such restriction upon the rights of the beneficiary of a will. But the court declined to follow the learned writer of the opinion to that extent, but held that such condition is valid where there is a gift over upon breach thereof. For ourselves we can not believe that public interests are in any manner prejudiced or the fundamental rights of any individual citizen in any manner violated by upholding a gift or bequest made on condition that the donee waive or release his claim to some other property right, or even upon condition that he observe some specified line of personal conduct not in violation of law, or contrary to good morals. The donee is under no compulsion to accept the gift. He is free to elect. The question he has to decide is the ordinary one which arises in nearly every business transaction— whether the thing offered him is worth the price demanded. The owner of property may give or refrain from giving. He may attach to his offer such lawful conditions as his reason, caprice, or malice may dictate, but he

is dealing with his own, and the donee, who claims the benefit of the gift, must take it, if at all, upon the terms offered. The rule is well expressed in *Rogers v. Law,* 66 U. S. 253, (17 L Ed. 58.) Dealing with a will which made provisions for certain heirs on condition that, if they should assert any claims under certain deeds mentioned in the will, the legacies in their favor should become void, the court there says: "We entertain no doubt as to its force and validity. The condition is lawful and one which the testator has a right to annex in the disposition of his own property. The legatees are not bound to accept the bequest, but, if accepted, it must be subject to the disabilities annexed. It must be taken *cum onere,* or not at all." This view of the law appeals to us eminently sound, and the objection to the validity of the condition prescribed in the sixth clause of the will in controversy cannot be sustained.

We have left only to inquire whether the suit instituted and prosecuted by the appellants asserting title in themselves independent of the will to a large part of the estate which the testator had undertaken to dispose of by that instrument was a breach of the condition against a contest. While "contest," as used in statutes, may be treated as a "word of art," it is hardly such in ordinary use and signification. The definition by Webster is "to make a subject of dispute; to call in question; to dispute." It is frequently used in the sense of, "to litigate," "oppose," "to challenge," "to resist," and, as applied to legal proceedings, it ordinarily implies a dispute between parties plaintiff and defendant before a court which is to decide the question put in issue. It is the contention of appellant that the words "shall contest the same" as employed by the testator in the will before us ought to be construed as referring to a direct assault upon the entire instrument as a will upon grounds which if established would render

5. SAME: forfeitures: "contest" defined.

it void in all its parts. That such an attack would be a contest of the will is certain, but that an attack upon the validity of a material part of the will which, if successful, would destroy the integrity of the plan adopted by the testator for the distribution of the estate, is not also a contest within the fair meaning of the words, cannot be conceded.

It is argued with much earnestness that in the litigation referred to the validity of the will was not made an issue; the only question there considered being the disputed title to certain real estate. But in a very essential respect the statement is misleading. It is true the validity of the will as a will, generally speaking, was not there called in question. But that the litigation had its genesis and purpose in the proposed defeat of the will as to a large portion of the estate which it purported to devise is perfectly clear. The widow was made a party thereto both in her own right and as executrix of the will. It was alleged that she claimed title under the will, but that said devise was void and of no effect because Selby B. Moran's title to the property was fraudulent and void as against the heirs of his former wife, who was the true owner of the land at the time of her death. The land thus sought to be recovered constituted one hundred of the one hundred and twenty acres devised to the wife by the third clause of the will, and with this provision defeated, the whole plan and scheme which the testator had framed for the disposition of his estate would be even more effectually upset and destroyed than would have been the case had the will been refused admission to probate. Evidently the first thought of the testator was to make suitable provision for his wife. The relations between himself and some of the children had become strained if not hostile, and, while not desiring to repudiate their claims upon his bounty, he proposed as far as possible to secure his widow in the property given her against assault by his heirs. In view

of the family history in relation to this land, it is not at all improbable that, in attaching a condition to the legacies given his children, he was seeking to fence against the very claim which was asserted by them in the action referred to. The suit so brought could be successfully maintained only by proof of the invalidity of the devise to the wife. The appellants therein disputed, challenged, contended against, put in issue, and sought to invalidate an essential part of the will, and take out from under its operation a material part of the estate of which it purported to make disposition, and this, we think, was a contest of the instrument within the evident meaning of its terms. The case of *Smithsonian Institution v. Meech,* 169 U. S. 398 (18 Sup. Ct. 396, 42 L. Ed. 793) is here quite in point. The testator, having no direct heirs, gave certain legacies to relatives of his wife, but devised the bulk of his estate to the Smithsonian Institution, including certain real estate, the title to which was in the name of his wife, whose death preceded his own. He further provided that the several legacies provided for in the instrument were made upon condition "that the legatees acquiesce in this will and I bequeath the share or shares of any disputing this will to the residuary legatee hereinafter named." After the death of the testator, certain heirs of his deceased wife, who were also legatees under his will, asserted title by descent from the wife to the property standing in her name at the date of her death, and which her husband had undertaken to devise to the Institution. They do not appear to have instituted any action to enforce their alleged rights; but, the question having been raised by them, the Institution brought an action to establish its right to the property, and asked that the legacies given to the parties claiming the land adversely to the will be declared forfeited. To this action the legatees appeared and asserted title in themselves as heirs of the testator's wife. The court of last resort held that the act of the legatees in

resisting the operation of the will according to the intent of the testator was a breach of the condition, and that the legacies were forfeited. In nearly every essential respect this precedent is directly in point with the case before us. There, as here, the husband devised lands alleged to have belonged to a deceased wife, and at the same time provided certain legacies for the wife's heirs. There, as here, those heirs sought to avoid, not the will as such, but only so much thereof as disposed of this particular property, and this was held to be a breach of the condition provided for forfeiture of the legacies. The only distinction between them urged upon our attention by counsel is in the language of the condition imposed. In the case at bar the condition is, "In case any of the legatees named as beneficiaries shall contest the same such legatee making such contest shall forfeit thereby his right to any portion of my estate;" while in the cited case the condition is "that the legatees acquiesce in this will and I hereby bequeath the share or shares of any disputing this will to the residuary legatee." It would be allowing the intention of the testator to be overthrown by indulgence in very finely drawn distinctions to say that one who refuses to "acquiesce" in a will and invokes the aid of a court to "dispute" the validity and effectiveness of one of its material provisions does not in very obvious sense "contest" the same. The same thought has been variously expressed, but in practically every instance has been given effect. For example, a condition that, if a legatee prevents or opposes the carrying out of a will, he shall forfeit his right to benefits under the instrument, is held to be violated by the act of the legatee in bringing suit against the executor individually for the conversion of property bequeathed to other legatees, but claimed by the legatee. *In re Bratt,* 10 Misc. Rep. 491 (32 N. Y. Supp. 168).

In another case a testator, after giving legacies to his children, devised land of which he was tenant in tail to

his wife, and provided that the gifts to the children should "be void if they attempted to dispossess their mother." After the testator's death, the son who was heir in tail sold the land to a third party who brought ejectment against the mother, and this was held to work a forfeiture of his legacy. *Harper v. Little*, 2 Am. Law Reg. (O. S.) 185. A contest by a husband of the legatee is a breach of such condition where the latter takes no steps to repudiate the responsibility for the proceeding, and silently permits it to be prosecuted. *Evanture v. Evanture*, L. R. 6 P. C. 1. A legatee who unites in an agreement to reimburse another legatee in case the latter by contesting the will shall lose his legacy under a condition against contest is held to have violated the condition, although not a party to the proceeding. *In re Stewart's Will* (Sur.) 5 N. Y. Supp. 32. It will thus be seen the tendency of the courts is to look to the essence of the condition imposed upon a legacy and give effect to the lawful intention of the testator, and they will therefore decline to put any strained or overtechnical construction upon the verbiage employed to enable a legatee to occupy the position of one who affirms a will so far as is to his own profit and at the same time repudiates the validity of its provisions for the benefit of others. Such a position is inequitable. The doctrine of equitable election is not perhaps a controlling consideration in this case, but it is so nearly akin to the rule we have here affirmed that it should not be passed without notice. That doctrine is stated in *Beall* and *McElfresh v. Schley*, 2 Gill (Md.), 181 (41 Am. Dec. 415), and quoted in the *Meech* case, *supra*, as follows: "From the earliest case on the subject the rule is that a man shall not take a benefit under a will and at the same time defeat other provisions of the instrument. If he claims an interest under an instrument, he must give full effect to it as far as he is able to do so. He can not take what is devised to him, and at the same

time claim as his own what is devised to another, although but for the will it would be his; hence he is driven to his election to say which he will take." In other words, he must take what the will gives him and relinquish all claim to what the will gives another, even though it be his own property, or he must relinquish all claim to the benefits provided for him in the will, and take his chance of making good his claim to the estate or some part thereof in opposition to the will. He can not occupy both positions; and, having chosen one and defended it to an unsuccessful conclusion, he can not return and take advantage of the other. *Hoit v. Hoit,* 42 N. J. Eq. 388 (7 Atl. 856, 59 Am. Rep. 43); *Chipman v. Montgomery,* 63 N. Y. 221; *Hainer v. Iowa Legion,* 78 Iowa, 250.

Upon the probate of their father's will, either of three courses was open to the appellants. They could yield to its terms, and by accepting the legacies abandon all claims of right in hostility to the will, or they could by proper action in court seek to have the will decreed invalid in its entirety upon allegation of proper grounds therefor, or, without asserting the invalidity of the instrument as a will, they could bring action to defeat its provisions by claiming ownership in themselves of the property of the estate independent of the will. They chose the latter course, denying the testator's title to the land, and impeaching the validity of the devise thereof by the will, and this election we think was a breach of the condition which the testator annexed to his gifts. It follows that the trial court did not err in holding the legacies to have been forfeited.

The decree appealed from in each of the entitled cases is therefore *affirmed.*

EVANS, C. J. (dissenting).—Upon one branch of this case I am not able to concur in the majority opinion. The question whether a provision in a will forbidding any con-

test thereof under penalty of forfeiture of all legacies therein should be given unqualified effect, is one upon which there is a diversity of opinion in the courts. The cases on the subject are comparatively few. It is perhaps true that the numerical majority of the courts which have passed upon the question have adopted the affirmative of the proposition, but some of these have done so with reluctance. I am convinced that the real merit of the argument is with the other view, and that such provision in a will is contrary to public policy, unless it be limited in its application to those contests wherein an element of bad faith enters. Under the law no will can become effective in any of its provisions until it shall have been admitted to probate by the court. Before admitting it to probate, it is the duty of the court to investigate the facts and circumstances attending its execution and bearing upon its validity, and to find judicially therefrom that such will was executed in due form, voluntarily, and understandingly by the purported testator. If the court should find otherwise, it must reject the will and refuse its probate. This duty is often, perhaps usually, performed in a formal and perfunctory manner. But the duty itself is more than formal. It is substantial and imperative and as sincere and solemn as any other judicial investigation and determination. Manifestly, in order to attain true judicial results, the court has need to learn true facts. These must come, if at all, from those who are or were in a position to know them. In obedience to the law a day of hearing is fixed, and notice thereof is published to the world. If the court is to learn the truth from outside sources of information, it is manifestly important that the highway of information to the court be kept open, and that there shall be no lion in the way. But here is a forfeiture provision in the purported will itself which may be a roaring lion intended to terrorize every beneficiary of the will. Its demand is that no adverse evidence be volun-

teered.  Its  tendency  is  necessarily  to  suppress  material
facts,  and  thus  to  impede  the  administration  of  the  law
according  to  its  true  spirit.    A  good  faith  contest  of  a
will  is  in  strict  line  and  in  strict  consistency  with  the
duty  of  judicial  investigation  and  determination  imposed
on  the  court  by  the  law.    It  differs  from  an  *ex  parte*  in-
vestigation  in  no  sense  except  in  degree.    In  the  one  case
the  court  is  too  often  compelled  to  grope  in  the  dark;  in
the  other  the  lights  are  made  to  burn.    A  contest  in-
tensifies  an  investigation,  and  adds  to  it  zest  and  thorough-
ness;  but  the  duty  of  the  court  remains  the  same.    A  con-
test  in  good  faith  is  necessarily  based  upon  facts  material
for  the  consideration  of  the  court  in  determining  the  val-
idity  of  the  instrument  as  a  will.    It  does  not  change  the
essential  quality  of  the  investigation  nor  of  the  judicial
determination  resulting  therefrom.    It  is  not  a  sound
answer  to  this  argument  to  say:    "Thus  saith  the  testa-
tor."    Did  he  say  it?    That  is  the  very  question  under  in-
vestigation  by  the  court  in  the  contest.    It  is  necessarily
involved  in  the  question  of  the  genuineness  and  validity
of  the  alleged  will.    If  the  purported  will  of  a  purported
testator  should. contain  a  proviso  forbidding  that  it  be  pre-
sented  for  probate  to  any  court  or  judge  thereof,  and
that  it  should  be  deemed  the  genuine  will  of  the  testator
without  other  proof  or  probate  proceeding,  doubtless  no
lawyer  would  say  that  such  proviso  could  have  any  effect.
The  question  would  still  remain  for  judicial  determination
whether  the  instrument  was  his  will  or  not.    If  such  pur-
ported  will  should  contain  a  further  provision  forfeiting
legacies  therein  made  in  the  event. that  the  first  provision
should  be  violated,  doubtless  again  we  would  find  unani-
mity  of  opinion  as  to  the  invalidity  of  such  provision.
The  law  guarantees  to  the  living  and  to  the  dead  that
no  instrument  shall  be  deemed  the  will  of  the  purported
testator  until  a  judicial  investigation  and  determination
of  such  fact  be  first  had.    This  is  the  law's  protection  to

the dead and to his estate, as well as to the living. From the very nature of the case no testator can waive it nor forbid it nor make it the basis of penalty or forfeiture. By the same logic he can not direct the form or method of such judicial investigation, nor its extent nor its degree of thoroughness. Why, then, should he be deemed to speak through an unprobated instrument, and deemed thus to foil a thorough investigation by forbidding contest before the court—the most practical means known to judicial experience for the disclosure of the truth?

To give unqualified effect to such provision in a will can serve no very useful purpose to the great body of wills which can always bear investigation. Its real efficiency consists in the protection which it will afford to an instrument of doubtful validity against a free and unhampered examination. It is into this class of instruments that this provision will find its way. The number of wills which are actually contested constitutes an exceedingly small percentage of the whole number of wills presented for probate, and it is only an occasional will that is defeated for invalidity. I know there is a popular impression to the contrary, but this is a mistake in fact. For every will which is defeated hundreds are admitted to probate. When it is considered that vast property interests are carried by these instruments and that they are often executed under difficult circumstances and in the last days of the last sickness, it is quite to be expected that a small percentage of them should prove to be invalid. And it does sometimes happen in very truth that a will regular in form, bearing the genuine signature of the testator in the presence of witnesses, is nevertheless not his will. On the contrary, it was framed and dictated by another, and the dying man mayhap put to it his listless hand without knowledge to comprehend or will to resist. Into such a will the proviso under consideration will hereafter surely find a place. The dictator of such a will will

be more likely to incorporate such a provision in the will than would the testator himself. On principle, therefore, and in the interest of good public policy, it seems clear to me that the contest of a will in good faith and for probable cause should not be forbidden nor penalized, nor should it be permitted to work a forfeiture of a legacy. Where a contest is in bad faith, and intentionally vexatious without probable cause, a different situation arises. This view is supported by the following authorities: *Jackson v. Westerfield,* 61 How. Prac. (N. Y.) 399; *Rhodes v. Muswell,* 29 Beav. 560; *Powell v. Morgan,* 2 Vern. 90; *Morris v. Burrows,* 1 Atk. 404; *Lloyd v. Spillet,* 3 P. Wms. 344. In *Chew's Appeal,* 45 Pa. 232, the following language is used in relation to such conditions: "Undoubtedly I think no provision could be formed to oust the supervisory power of the law over such conditions and limitations to control them within their legitimate sphere which is generally to prevent vexatious litigation." In *Smithsonian Inst. v. Meech,* 169 U. S. 413 (18 Sup. Ct. 402, 42 L. Ed. 793), Justice Brewer says: "When legacies are given to persons upon conditions not to dispute the validity of or the dispositions in wills or testaments, the conditions are not in general obligatory, but only *in terrorem.* If, therefore, there exists *probabilis causa litigandi,* the nonobservance of the conditions will not be forfeitures."

II. I dissent from the majority opinion for the further reason that in the case under consideration there was no contest of the will. This was the only condition specified in the will, the breach of which should work the forfeiture. The legatees were children of the testator by his first wife. What they did do was that they asserted title as heirs of their mother to an undivided interest to certain land which they claimed belonged to their mother at the time of her death. The will in question devised such land to the testator's widow. The will contained no dec-

laration of fact as to the nature or extent of testator's title. It is held in the majority opinion that this was in effect a contest of the will because it aimed to disturb the distribution of property therein provided for. To my mind such a construction of the will enlarges its provisions, and imposes conditions as a basis of forfeiture which were omitted therefrom by the testator. A condition in a will forbidding a contest thereof, and a condition requiring the relinquishment of other rights arising to the legatee outside of the will, are essentially different from each other. And this distinction is important to be observed in this case. A condition attached to a legacy that the legatee shall receive the same in satisfaction of a claim, or that he shall relinquish certain rights, real or apparent, existing independent of the will, is clearly valid. It has in it no element repugnant to public policy, and the authorities are uniform in the support of such a condition. Such a case was *Rogers v. Law,* 66 U. S. 253 (17 L. Ed. 58), which is cited in the majority opinion. The legacies in that case were made upon condition, not that the legatees should not contest the will, but that they should relinquish all claim of right under certain specified deeds which existed independent of the will, and prior to its execution. In the case under consideration, if the testator had incorporated a condition to the legacies that the legatees should relinquish all claim of right to the real estate in question, such condition would have been clearly valid. He did not do so. The only condition imposed was that they should not contest the will. The contest of a will is a proceeding well defined and well understood. There is no room for fair argument as to what is meant by it. In the quieting title suit the plaintiffs tried no issue, nor tendered any which could have been tried or tendered in a contest of the will. As respects the condition imposed, the language of the will is direct and free from ambiguity. Instead of following the elementary rule that a strict con-

struction will be interposed against a claim of forfeiture, the majority opinion adopts a construction which is much broader than the language of the will. In support of this construction *Smithsonian v. Meech,* 169 U. S. 398 (18 Sup. Ct. 396, 42 L. Ed. 793), is relied upon as a controlling precedent. But a careful reading of the opinion in that case will disclose the fact that it does not support the conclusion of the majority at this point. On the contrary, it is quite adverse to it in all its reasoning. I have already quoted from such opinion. The facts in that case were that the testator claimed to own certain real estate, the legal title to which rested in the name of his deceased wife. The will contained a recital of facts to the effect that the testator did own such property, and stating the circumstances of the purchase, and that the title was taken in the name of the wife in trust for himself, and making reference to certain affidavits and other evidence in support of his assertion of title. He first executed a will making certain legacies therein to his wife's relatives on "condition that no attempt be made to break the will." This condition was afterwards changed by substituting therefor the condition "that the legatees acquiesce in this will." And this latter condition is the one that was construed by the court. The court declared a distinction between the latter condition and the former. It was held, in effect, that this latter condition was not only a condition against the contest of the will, but that it called upon the legatees to "acquiesce" in the recitals of fact contained in the will. By such construction the case was put into that class of cases wherein the legatee is required to relinquish rights arising independent of the will, such as *Rogers v. Law,* already referred to. I urge, therefore, that the majority opinion has no support in the cited case, and that it presents a marked departure from safe rules of construction. I think, therefore, that upon this branch of the case there ought to be a modification of the decree entered below.