JULIA ALLEN ET AL. APPEAL FROM PROBATE.

First Judicial District, Hartford, October Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A testator gave the residue of his estate to five trustees in joint tenancy,
and provided that if their number should be reduced to two, "the
judge of probate" in the testator's district should appoint a third,
and in so doing should "regard the wishes of the existing trustees,
or the persons interested in the estate, so far as he believes he can
with safety to the estate, but no further." After the death of three
trustees the two surviving expressed no wish as to the person who
should fill the vacancy, and the beneficiaries could not agree upon a
nomination, whereupon the Court of Probate appointed W, who had
no connection with any of the testator's family or relatives, and whose
appointment was not requested by any of the beneficiaries. Upon an
appeal from this appointment it was *held*: —
1. That by "judge of probate" the testator meant to describe the Court of
Probate for the district of his domicil, rather than the individual who,
for the time being, might occupy that office.
2. That if the attempted direction and control of the action of the Court
of Probate was permissible under § 491 of the General Statutes relat-
ing to the appointment of testamentary trustees, it amounted to no
more than a grant of power to certain individuals in a matter of pri-
vate confidence, which could be exercised only by their unanimous con-
currence; and on the other hand, if the provision was to be regarded
as an unauthorized attempt to confer jurisdiction upon a court and
dictate its proceedings, it was void; and consequently, upon either
assumption, the Court of Probate proceeded properly in filling the va-
cancy.
The letters of a judge and his declarations out of court are mere hearsay,
and incompetent to show the process of reasoning leading to a judg-
ment.

[Argued October 7th—decided November 3d, 1897.]

APPEAL from an order and decree of the Court of Probate
for the district of Windsor, appointing a testamentary trustee
to fill a vacancy, taken to the Superior Court in Hartford
County and tried to the court, *Elmer, J.;* facts found and
judgment rendered for the appellants, and appeal by one of
the appellees for alleged errors in the rulings of the court.
*Error, and judgment reversed.*

The will created a trust of residuary estate, for the bene-

fit of four sisters of the testator during their lives, and of the children of two of them, during the lives of such children, with remainder thereafter to the grandchildren of said two sisters, or their issue or legal representatives. This estate was vested in five executors and the survivors or survivor of them, and their successors, as trustees, in trust for the use of the parties beneficially interested. Of the five persons named as executors, two were the husbands of two of the sisters, and three were of the immediate family of another of them, one being her husband, and two her sons-in-law. The fourth sister was unmarried. All the executors qualified and accepted the trust in 1879. In 1896 the death of one left only two surviving, Samuel H. Allen, then seventy-eight years old, the husband of Julia P. Allen, one of the four sisters of the testator, and Herbert R. Coffin, a son-in-law of another sister who died after the testator.

The will contained the following provisions : " While the labor and detail of the care of my property and estate may be very properly done by some one of the executors and trustees, I urge that all important matters shall be done on consultation of all, so far as practicable, especially in the investments of money received from sales, collections, or any source, and that frequent and periodical examinations be made by all the executors and trustees, so far as practicable, unless prevented by absence, sickness, or unavoidable cause ; and books should be kept, with correct lists and schedules of all property and estate, and all changes recorded, and also of all receipts and disbursements, so that the condition of the estate and every part thereof can be thoroughly understood by such examinations, and at all times by all the executors and trustees.

" In case of vacancy in my executors and trustees or their successors, so that there shall not at any time be only two, the Judge of Probate of this district shall appoint a third to act with them, and in making this appointment the Judge of Probate shall regard the wishes of the existing trustees, or the persons interested in the estate, as far as he believes he can with safety to the estate, but no further.

" While I do not desire the Judge of Probate to be governed, in fixing the amount of bonds for my executors and trustees, by the law with regard to the amount of personal property, so as to perhaps make it impracticable for them to find bondsmen, I desire that such bonds shall be given, which, together with their personal responsibility, shall as far as practicable secure the execution of the trusts and the estate from loss."

Two of the sisters were living in 1896. One had died without issue, and one, leaving issue.

Mrs. Samuel H. Allen filed in the Court of Probate for the district of Windsor a request for the appointment, to fill the vacancy, of her son Julian S. Allen. An unmarried sister joined in this request. Of the descendants of the sister who had died leaving issue, one daughter and one granddaughter filed a similar petition for the appointment of the latter's husband, and one daughter petitioned for the appointment of her brother-in-law. No wishes were expressed by the surviving trustees.

The Court of Probate, after hearing the parties, appointed John H. White, who had no connection with any of the testator's family or relations, and whose appointment was not asked for by any of them.

Upon the trial of the case the appellants offered the following letter from the judge of probate, addressed to Samuel H. Allen :—

"WINDSOR, CONN., October 29, 1896.

"Mr. SAMUEL H. ALLEN, Trustee of the Estate of WILLIAM S. PIERSON, HARTFORD, CONN.

"Dear Sir:—After full consideration of the matter of appointing a trustee upon said estate, I feel that it will be necessary that the appointment should be of one from outside the family. Should be pleased to hear from you if you have any one to suggest for the position.

"Very truly yours, D. ELLSWORTH PHELPS."

To the admission of this letter as evidence the appellee (appellant here) objected, but the court admitted the same.

The appellants offered the testimony of Eustace L. Allen as to two conversations which he had had with the judge of probate, one on the 29th day of October, 1896, and the other November 11th, to both of which conversations the appellee objected, but the court admitted the same. This testimony was that on the 29th day of October, 1896, he had had a conversation with Judge Phelps in the probate office in Windsor, in relation to the reason why he had refused to appoint Julian S. Allen as a trustee to fill said vacancy. Judge Phelps in his presence then wrote the letter to his father above referred to, for the witness to take to his father, and the judge stated that he had decided to appoint one outside the family, because of the disagreement in the family; that he could not appoint Mr. Julian S. Allen, whose name had been mentioned, and much less Mr. Spalding, whose name had been mentioned; that the objection of one of the trustees alone to the appointment of Mr. Allen would not have been sufficient to justify him to refuse to appoint at the request of the beneficiaries; that he did not refuse on the ground that he considered him an unsuitable or an improper person, but only on account of the disagreement in the family; that subsequently, on the 11th day of November, the same witness (Eustace L. Allen) met Judge Phelps in the highway, and asked him why he refused to appoint his brother, Julian S. Allen, and the judge replied that it was because some of the beneficiaries objected. The witness then asked the judge if he would have appointed him if they had not objected, and he said "yes;" if they had all agreed he would have appointed him.

Upon the above evidence, to the admission of which the appellee duly objected, the court found that the said judge of probate did not refuse to appoint Julian S. Allen because he was not a suitable person, nor did he pass upon the question whether he could appoint him with safety to the estate; but that he declined to make said appointment on the sole ground that only a part of the beneficaries asked for his appointment, and the other beneficiaries objected to such appointment.

VOL. LXIX—45

The appellee, upon the hearing, claimed among other things, as matter of law, that the provisions of the will did not divest the judge of probate of his power and discretion in appointing a trustee to fill a vacancy in the absence of a nomination by the existing trustees, or by the persons interested in the estate; that the letter of Judge Phelps was immaterial and irrelevant; that the conversations between Mr. Eustace L. Allen and the judge of probate were immaterial, irrelevant, and inadmissible, and were hearsay evidence; that the Court of Probate is a court of record, and its action can only be shown in and by its decree; and that the decree appealed from showed presumptively that sufficient reasons were given by those interested in the estate against the appointment of Julian S. Allen, aside from the question of safety to the estate. The court did not sustain any of said claims, but rendered judgment for the appellants.

*Charles E. Gross*, for Annie P. Allen, one of the original appellees.

*Charles E. Perkins*, for Julia P. Allen et al. the original appellants.

BALDWIN, J. In 1872, when the will, upon the construction of which this case turns, was executed, it was part of our statute law, as it still is, that every testamentary trustee should, unless otherwise provided in the will, be required by the Court of Probate having jurisdiction over the estate of the testator, to give a sufficient bond, with surety; and also that, if the will did not provide for the contingency of his death, the same court should, upon that event, appoint some suitable person as his successor. General Statutes, Rev. of 1866, p. 407, §§ 26, 27; General Statutes, Rev. of 1888, §§ 490, 491.

In the will of William S. Pierson certain provisions on these subjects were made. The five executors and trustees, whom he named, were to hold in joint tenancy; but whenever their number should be reduced to two, he directed that

the judge of probate of the district to which he belonged should appoint a third, and in so doing should "regard the wishes of the existing trustees, or the persons interested in the estate, as far as he believes he can with safety to the estate, but no further." Then follows a clause stating that while he did not desire the judge of probate to be governed in fixing the amount of bonds for the executors and trustees by the law with regard to the value of the personal property belonging to the trust, he wished such bonds to be given as, together with their own personal responsibility, should, as far as practicable, secure the estate from loss.

This latter provision assumes that the judge of probate has certain duties under the law as to requiring bonds from executors and trustees, which may be affected by testamentary directions. Such is the case in respect to Courts of Probate, and to judges of probate while acting officially as such a court; and it is obvious that by the term "Judge of Probate" the testator here meant to describe the Court of Probate for the district of Windsor. The rule of construction that words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appear by the context or they be applied to a different subject, applies with double force where the word in question is found in two sentences in immediate succession. It was, therefore, the Court of Probate which the testator must be deemed to have had in mind, in directing as to the exercise of the power of appointment; although his reference to the "Judge of Probate of this district," had it stood alone, might have been taken to apply to that individual who, for the time being, should be occupying that office. *Bishop* v. *Bishop*, 54 Conn. 232.

This clause of the will seeks to impose a certain limitation on the action of the court in making an appointment. The imperative phrase "shall regard the wishes," if taken in its natural import, is equivalent to "shall be governed by the wishes." We find it unnecessary to determine whether, assuming this to be its proper construction, the manner in which the testator sought to direct and control the action of

708                    NOVEMBER, 1897.

Allen et al. Appeal from Probate.                    Vol. 69

the Court of Probate is such as, under General Statutes, § 491, the law permits. If the provision be given full effect, it would amount to no more than the grant of a power to certain individuals, by the expression of their wishes, to control within certain limits the judgment of the court in the choice of a trustee. It would, as to them, concern a matter of mere private confidence; and every power of that description, conferred upon several persons, must be exercised by their unanimous concurrence, or not at all. The testator undertook to create an alternative power. If the two surviving trustees had agreed on any nomination, and had all the beneficiaries under the trust then in being (including, in the case of minors, their guardians), agreed on another, the Court of Probate would have been left free to choose between them. As it was, the trustees expressed no wish, and the beneficiaries agreed on none ; each of those who appeared, objecting to the nominations made by any of the others. Under these circumstances, the Court of Probate properly proceeded to fill the vacancy, without regard to wishes expressed by any number of the *cestuis que trustent*, less than the whole; even if the provision made by the testator be regarded as supported by the statute in its full extent.

On the other hand, if it can be regarded as an unauthorized attempt to confer jurisdiction upon a court of justice and dictate its course of proceeding, then it was so far forth void, and the decree of the Court of Probate was a valid exercise of its ordinary statutory powers. This would be true, notwithstanding the general rule of equity jurisprudence that in appointing a trustee the court should always pay regard to the wishes of the person who may have constituted the trust, or of those whom he has empowered to speak in his behalf; for in this case no such wishes were ever expressed.

The evidence received to show the reasons which led the judge of probate to pass the decree in question was, in any view of the case, totally incompetent and inadmissible. His letters and declarations out of court were mere hearsay. Judicial decrees speak for themselves, and whenever, in the rare instances when it may be permissible to inquire into the

process of reasoning leading to a judgment, no finding on that subject has been made, the facts must be proved, as in other cases, by direct testimony, and the judge put upon the stand.

There is error, and the judgment of the Superior Court is reversed.

In this opinion the other judges concurred.