FRED L. GRIFFIN, ADMINISTRATOR, C.T.A., AND TRUSTEE (ESTATE OF WILBUR STURGES) *v.* JAMES R. STURGES ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 11—decided December 21, 1944.

*Richard H. Ireland,* for the plaintiff.

*John R. Cuneo,* with whom, on the brief, were *Frederick F. Lovejoy, Jr.* and *Sherwood O. Chichester,* for the named defendant.

*John S. Barton,* for the defendants Norfield Congregational Church Society et al.

*Warren F. Cressy,* for the defendant Masonic Charity Foundation of Connecticut.

*John J. Cuneo,* pro se as guardian ad litem for the undetermined or unborn issue of James R. Sturges.

MALTBIE, C. J.  The plaintiff, administrator c.t.a. upon the estate of Wilbur Sturges and trustee under his will, brought this action seeking advice as to his duties and it has been reserved to this court.  The second article of the will contained these provisions: The testator gave $10,000 to a trustee, with direction to pay the interest and income to his son James, adding: "I direct that no part of said interest and income shall be liable to be taken for any debt or debts of my said son, and direct said trustee to pay the same to my said son, only as above provided."

The will then proceeded: "If at any time, my said son, James R. Sturges, shall absolutely give up and refrain from the use of alcoholic or intoxicating liquors, then and in that event, from the time he shall comply with this provision, I give, and bequeath to said Louis Goldschmidt, as such Trustee, all my prop-

erty and estate, in trust, for the purposes above provided for the benefit of my said son, and direct said Trustee to pay said income and interest to my said son, which said Trustee shall receive from my whole estate, so long as my said son shall so refrain from such use of said liquors." If at any time James should claim that he had complied with this condition and was entitled to receive the income from the whole estate but the trustee should neglect or refuse to pay it to him, James might make his written application to the Court of Probate for the district having jurisdiction of the settlement of the estate and the court should hear and determine the matter, after proper notice to interested parties. If the court found that he had complied with the condition, it might order the trustee to pay the income to him, but if it should determine that he had not complied with it, then he was not to receive income from more of the estate than the $10,000 first given. If the court should determine that he was entitled to receive the income, the trustee was not to be held personally liable for any refusal to pay it before the court had determined the question. If, after it had ordered payment from the income of the entire estate, the trustee should thereafter be of the opinion that James had violated the condition under which he was entitled to it, the trustee might apply to the Probate Court for an order revoking its prior order that the payment be made, and the court, after hearing, might take that action, and then James was to receive only the income from the sum of $10,000. James or the trustee might from time to time renew the application either for the payment of the income on the whole estate or for an order revoking such a requirement. The judgment of the Court of Probate in any of these matters should be conclusive on all persons interested and no appeal should be allowed.

If at any time the income paid to the son should not, in the opinion of the trustee, be sufficient for his comfortable support, the trustee might pay him such part of the principal as he should deem necessary for such a purpose, and if the son deemed the income insufficient for the purpose and the trustee refused to pay him any part of the principal, the son was authorized and empowered to make written application to the Court of Probate for such order as the judge of the court might deem proper; and the decision was to be final and conclusive and no appeal was to be allowed therefrom. Any income received by the trustee which was not paid to the son was to be added to and become a part of the principal. At the death of James the trust was to cease and provision was made for the payment of income and principal to James's children.

The third article provided that, if James had no children entitled to receive the property under the preceding provision, a Church Society and a Lodge of Masons were to receive legacies in definite amounts, and the remainder of the estate was given, under certain conditions, to the town of Weston for the purchase of a Bible for each child attending its public schools, but if the town should refuse to accept the gift under the conditions stated or, having accepted, should violate them, then the property was to go to the Masonic Charity Foundation of Connecticut. In the fourth article the testator provided that if any legatee or devisee under the will should object to the probate of the will or should "contest the same, or any of its provisions, in any Court," then the testator revoked any and all provisions made in it for the benefit of that legatee or devisee and the legacy so revoked was to become a part of the residue of the testator's estate and be disposed of as such.

It is necessary first to consider whether by reason

of the concluding provision of the will, to which reference has just been made, a forfeiture has been incurred. The complaint raised no issue as to the interpretation of the will, but was restricted to questions concerning the validity of various provisions in it; it particularly queried the validity of the gifts of income to the son in the second article and the gift at his death to his children; and it went on generally to query whether, if these were held to be invalid, the bequests in article third of the will were valid, making specific mention of the gift to the town of Weston. James, in his answer and statement of claim, asserted the invalidity of all the gifts specifically mentioned in the complaint, and particularly the invalidity of the gift to the Masonic Charity Foundation, and his pleading concluded with the claim that the will should be "so construed as to find" that the attempted disposition of the estate in the second and third articles is invalid and the property is intestate, with the result that it would pass to him as sole heir-at-law and next of kin. The court had appointed a guardian for the undetermined and unborn children of James, and the guardian, in his answer and statement of claim, asserted the invalidity only of the provisions in the second article for the payment to the son of the income of the entire estate upon the conditions mentioned in the will. Both James and the guardian have pressed these claims before us.

It is not possible to construe the provision of the will concerning a contest as referring solely to objections to the probate of the will; after that is mentioned, the will also specifies a contest of "the same, or any of its provisions, in any Court." The testator evidently had in mind legal proceedings of any nature which would defeat his expressed will. *Moran* v. *Moran*, 144 Iowa 451, 464, 123 N. W. 202. Where an

action is brought to secure an interpretation of a will, an assertion by any beneficiary of the construction which he believes to be the correct one is not a contest as that expression is used in the will before us, because he is merely seeking to give effect to the real intent of the testator. *South Norwalk Trust Co.* v. *St. John,* 92 Conn. 168, 176, 101 Atl. 961. The present action goes beyond such a situation because the only issues presented concern the validity of the provisions of the will.

In this case, however, James is not in the position of one who has taken the initiative in raising issues as to the validity of the gifts; in response to the complaint he has merely stated his position with reference to provisions the validity of which was put in issue by it, except that he has particularly questioned certain gifts to which it referred only in general language. We agree with the reasoning of Vice-Chancellor Stein in *Federal Trust Co* v. *Ost,* 120 N. J. Eq. 43, 64, 183 Atl. 830, where he said: "If this were a suit brought by the widow for the purpose of having the will so construed as to render invalid the trusts therein constructed, I should have little hesitancy in holding that she had by such conduct offended against the prohibition of the will and had forfeited her right to take under it. The controlling circumstance, it seems to me, is the fact that the questions are presented by the executor who draws the beneficiaries into the argument. It would be grossly unfair in such circumstances to visit upon the beneficiary expressing himself the penalty of forfeiting his share of the estate. The beneficiary need not stand mute and the law will not by threat of forfeiture compel his silence when questions are propounded by another touching the right and interest of the beneficiary under the will. A contrary rule would make the suit for the construction of the

will a unilateral proceeding, and the presence in such cause of the beneficiaries as defendants could well be dispensed with. It seems to me that when the language of a will is under investigation and the testator's intention is being inquired into a beneficiary may freely speak, when brought into the cause, without incurring the penalties provided in the will against a contesting beneficiary, even while so speaking the beneficiary contends for a construction which will by operation of law render provisions of the will invalid. The court is obliged to construe the will in accordance with legal principles. Those only who have an interest in the will have the disposition to assist the court in its labors. If they must be silent, for fear of forfeiture of benefits given them by the will, the court will be hindered by the command of the testator in reaching a correct result. For assisting the court in furnishing facts and presenting arguments the beneficiary should not be penalized, where that service comes not from a volunteer but from an invitee." The position taken by James has not rendered void the provisions of the will in his favor and, a fortiori and regardless of other reasons, the guardian has not by his pleadings and argument brought about a forfeiture of the interests of those whom he represented.

There can be no question of the validity of the provision by which $10,000 was placed in trust with direction that the income be paid to James. It is not our law that, even where the principal of a fund given in trust is ultimately to go to one who for a period of years is to receive only the income, the trust is a dry trust, and the beneficiary is entitled to receive the principal at once; *DeLadson* v. *Crawford*, 93 Conn. 402, 410, 106 Atl. 326; nor would such a gift be invalidated by the invalidity of other independent provisions of the will. *Congregational Home Mis. Soc.* v.

*Thames Bank & Trust Co.,* 127 Conn. 1, 11, 14 Atl.
(2d) 626. If the direction that the interest of James
under this provision could not be taken for his debts
would be ineffective to create a spendthrift trust, this
would not affect the validity of the trust as far as he
is concerned. *Greenwich Trust Co.* v. *Tyson,* 129
Conn. 211, 224, 27 Atl. (2d) 166.

To give a literal effect to the provision that, if James
should absolutely abstain from the use of intoxicating
liquors, the testator "from [that] time," gave and be-
queathed all his property to the trustee named would
mean that, if James was not qualified to receive the
income from it when the estate was ready for settle-
ment, there would be a failure to make provision for
devolution of the title until such time as he might
thereafter meet the condition imposed. There can be
no question as to the testator's intent that his entire
estate should be available in the form of a trust to
afford the means of paying James the income from it
at whatever time in his life he might prove himself
entitled to it. That intent could be effected only by
a provision for holding the property in trust from the
time the estate was settled; and under these circum-
stances the law will imply that it is to be so held.
*Donalds* v. *Plumb,* 8 Conn. 447, 452; *Belfield* v. *Booth,*
63 Conn. 299, 303, 27 Atl. 585; *Pinney* v. *Newton,* 66
Conn. 141, 153, 33 Atl. 591; *Ryder* v. *Lyon,* 85 Conn.
245, 250, 82 Atl. 573; *Shepard* v. *Union & New Haven
Trust Co.,* 106 Conn. 627, 633, 138 Atl. 809; *Shannon*
v. *Eno,* 120 Conn. 77, 81, 179 Atl. 479; 1 Perry, Trusts
& Trustees (7th Ed.), § 121. Indeed, the provision
that any income received by the trustee which was not
paid to James should become a part of the principal
of the fund in itself carries an implication that the
property is to be held in trust from the time the es-
tate is settled. Should James not have qualified to

receive the income of the entire property at that time, the Probate Court has ample power to appoint a trustee, either the one named in the will or another, to hold the property until by the terms of the will it can be delivered to the trustee named. A trust never fails for want of a trustee, but the court will appoint someone to act. *Rayhol Co.* v. *Holland*, 110 Conn. 516, 524, 148 Atl. 358; *Shannon* v. *Eno*, supra, 82.

The provision that if James should give up and refrain from the use of intoxicating liquor he was to receive the income from the entire estate is in itself valid. *Holmes* v. *Connecticut Trust & Safe Deposit Co.*, 92 Conn. 507, 514, 103 Atl. 640. It is assailed by reason of the fact that it is left to the Court of Probate to determine whether the son has become entitled to receive that income. Aside from certain minor details and one major provision to which we shall later refer, the will does not, as claimed, impose any duty upon the Court of Probate which goes beyond its proper function. Section 4939 of the General Statutes gives courts of probate, after public notice and hearing, power to authorize executors, administrators, guardians, conservators and trustees to compromise and settle doubtful or disputed claims. One of the main purposes of this provision is to protect a fiduciary in settling a disputed claim by enabling him to have his action approved in advance instead of leaving the matter to be determined when he presents his account for allowance. *Johnson's Appeal*, 71 Conn. 590, 595, 42 Atl. 662; *Marks' Appeal*, 116 Conn. 58, 66, 163 Atl. 600.

The situation before us in *Johnson's Appeal*, supra, was that, after an estate had been settled as intestate and the property distributed, a will was found and admitted to probate; the administrator with the will annexed entered into a compromise agreement with

the heirs to whom the property had been distributed and those to whom it was given by the will for the settlement of their respective rights. Certain of the latter were under conservators who entered into the agreement on their behalf. An application was made to the Probate Court to approve the agreement under the statute. As it then read, it was restricted to executors, administrators and trustees in insolvency. We held that, as regards the administrator c.t.a., the court had authority under the statute to approve the agreement; that the statute did not extend to agreements by conservators; but that as conservators had power to settle and compromise claims against the estates of their wards, subject to the approval of the Probate Court when they submitted their accounts, the court had implied power to approve a settlement in advance. See also *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 160, 147 Atl. 562. In *Stempel* v. *Middletown Trust Co.,* 127 Conn. 206, 15 Atl. (2d) 305, the facts were that a testator by his will provided that the income of a trust he established should be used for the support of an incompetent daughter and of another daughter should she become destitute, and that, at the death of the survivor of these two, a third daughter, Olive, was to have the life use of the fund then remaining, with provision that, at her death, it should go to her issue. In order to postpone a determination of certain questions as to the true meaning of the will and to make possible the use of a part of the income for Olive's children, she, the trustee, the guardian of two of her children and the conservator of the testator's incompetent daughter entered into an agreement as to the use of the income. We held (p. 222) that it was proper to submit this agreement to the Probate Court for approval under the statute and

that, upon its being approved, it became conclusive on all parties.

In the case before us, the trustee under the will is bound to account to the Probate Court, which has jurisdiction over the settlement of his account. General Statutes, Sup. 1941, § 690f; Sup. 1943, § 673g. If he should refuse to pay to James the income from the entire estate when James had given up the use of liquor, or if he should pay it to James when he had not met that condition, he would, when his account came before the Probate Court for acceptance, be answerable for a failure to carry out the terms of the trust. If he and James are at issue as to the latter's right to receive the income, the situation is one which falls fairly within the purview of the statute. We see no reason why, in such a situation, if the trustee neglected to apply to the Probate Court, James might not properly do so. Whoever applied, the court would have power to determine whether James was entitled to the income. For the same reasons, it could properly determine whether James was entitled to a part of the principal for his comfortable support.

The will, it is true, provides that, if the court determines that James is entitled to the income, the trustee shall not be held personally liable for any refusal to pay it before the court has decided the issue. This provision is in reality not a limitation upon the power of the court to act but upon the right of James to receive the income. In effect, it means that, if, in case of a dispute, James is found entitled to the income, his right to it shall accrue only when judgment to that effect is rendered. The provision that the order of the court shall be conclusive and no appeal shall be allowed is contrary to the statutes giving a right of appeal from any decree of a Court of Probate to the Superior Court; General

Statutes, § 4990; and this limitation must be held ineffective. However, the situation is not one where the invalidity of this provision will so destroy the testamentary scheme that the whole gift must be held invalid; rather, it is one where effect should be given to the dominant purpose of the testator, though this incidental provision is void. *Congregational Home Mis. Soc.* v. *Thames Bank & Trust Co.,* supra, 12; *Tarrant* v. *Backus,* 63 Conn. 277, 285, 28 Atl. 46. In so far as in some minor respects the testator's provisions for securing an adjudication by the Court of Probate vary from established court procedure, they must of course yield; but certainly that would not affect the validity of the gift.

Our decision that the gifts of income to James are valid results in a complete disposition of the estate so long as he lives. He is now about fifty-two years of age and is without living issue of his body. We cannot know that he will not in the future have such issue who will be alive at his death. On the other hand, we cannot assume that he will. If he should, they should have an opportunity to be heard as to the validity of the gift over to them upon his death. Had the provisions for the payment of income to James been held invalid, it would be necessary to consider his further claim that the other provisions in the will were also invalid and hence the property was intestate, but as we have held the gifts to him to be valid, that situation is not before us. There are no circumstances which justify our now giving answers to questions which may in the end prove academic, which may affect persons yet to be born and which in any event would be effective in determining rights only when a man now fifty-two years of age shall die. *Russell* v. *Hartley,* 83 Conn. 654, 664, 78 Atl. 320;

*Gorham* v. *Gorham,* 99 Conn. 187, 195, 121 Atl. 349; Conn. App. Proc., § 128, p. 175.

To questions (a), (b) and (c), asking whether the gifts in trust to pay the income to James R. Sturges are valid, and specifically whether the Court of Probate has power to make the determinations we have discussed above, we answer "yes." To the questions (j) and (k), asking whether James or his possible issue have forfeited their rights by reason of the claims they have made, we answer "no." The other questions we do not answer.

No costs will be taxed in this court to any party.

In this opinion BROWN and DICKENSON, Js., concurred.

JENNINGS, J. (concurring). I agree with the advice given in this reservation but cannot agree with so much of the opinion as approves the provisions of the will directing the procedure to be followed by and the powers given to the Court of Probate. A testator cannot do these things by will. *Allen's Appeal,* 69 Conn. 702, 708, 38 Atl. 701. I think the provisions referred to should be treated as surplusage.

In this opinion ELLS, J., concurred.