BANKERS TRUST COMPANY, EXECUTOR AND TRUSTEE
(ESTATE OF EDWARD J. PEARSON), ET AL. *v.*
HARLOW S. PEARSON ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

334

Argued June 10—decided August 13, 1953

William H. Timbers, with whom, on the brief, was Francis P. Schiaroli, for the plaintiffs.

Charles M. Lyman, with whom were Joseph C. Hogan of the New York bar and, on the brief, Spencer S. Hoyt, for the named defendant.

Richard H. Bowerman, with whom, on the brief, was Mary E. Manchester, for the defendants Julia P. Hunt et al.

*Arthur L. Shipman, Jr.,* for the defendant Annabelle W. Pearson.

*Samuel H. Platcow,* pro se, guardian ad litem for the defendants Ann H. Pearson et al.

*J. Stephen Knight,* with whom, on the brief, was *Max H. Schwartz,* for J. Stephen Knight, guardian ad litem for the defendants Merrill Hunt et al.

*David L. Daggett,* pro se, guardian ad litem for the defendants Anne Warner et al.

*Joseph L. Melvin,* for the defendant Cornell University.

INGLIS, J. This reservation calls for the interpretation of the will of Edward J. Pearson, late of New Haven. The following facts have been stipulated: The testator died on December 7, 1928, leaving a will which had been executed on October 20 of the same year. Surviving were his widow Gertrude S. Pearson; his only son, Harlow S. Pearson; his mother, Lucy Pearson; his brother, Raymond A. Pearson; his two sisters, Anne P. Warner and Julia Pearson Hunt; his brother-in-law, William F. Hunt; and certain children of his brother and sisters. Further details of the family tree will be set forth later in the opinion in connection with the discussion of the specific questions to which they are relevant. The testator's mother died May 19, 1929. His brother Raymond died February 13, 1939, and his brother-in-law, William F. Hunt, April 13, 1951. The testator's widow, Gertrude, died June 2, 1951. All the above-mentioned persons who are now alive, together with

Harlow S. Pearson's wife and children, all the living children of the testator's siblings, and their children and grandchildren, born and to be born, are parties defendant in this action.

By his will, the testator, after making various specific and pecuniary bequests, disposed of the rest, residue and remainder of his estate in the seventh article. The provisions of this article give rise to most of the questions propounded on the reservation. The article reads as follows (the numbering of the subsidiary paragraphs having been added for easier reference):

"Seventh: All the rest, residue and remainder of my estate, both real and personal, of whatsoever the same may consist and wherever the same may be situated, I give, bequeath and devise to my trustees hereinafter named, in trust nevertheless, to invest, reinvest and keep invested, and to collect, recover and receive the rents, issues, interest, income and profits thereof, and after deducting the agreed-upon or legal fees, expenses of administration and taxes to pay the net income of said residuary estate in monthly installments if practicable, but not less frequently than quarterly, as follows:

"[1] To my wife during her life, two-thirds of the net income of said residuary estate, and an additional one-sixth of the net income of said residuary estate, after the death of my son and his wife, if he should marry and leave no issue.

"[2] I authorize and empower my wife to dispose of by her last will, and I direct said trustees to convey, assign, transfer and deliver to such persons and in such manner and proportions as she shall designate by her last will, one-third of the net income of the said residuary estate, or one-third of the principal thereof.

"[3] I further authorize and empower my wife to take and have, and I direct said trustees to convey, assign, transfer and deliver to her at any time she may so elect, not to exceed one-third of the principal of said residuary estate, upon condition, however, that the residuary estate from which she shall be entitled to income and the residuary estate which she is empowered to dispose of under preceding paragraphs, shall thereby be reduced by an amount equivalent to the proportion taken by her under this paragraph.

"[4] In case my wife shall die before me, or surviving me shall die intestate, I direct said trustees to convey, assign, transfer and deliver one-third of the principal of said residuary estate to her heirs at law.

"[5] To my son during his life, and during the life of my wife, one-sixth of the net income of said residuary estate, and upon the death of my wife and thereafter, one-third of the net income of said residuary estate.

"[6] If my son marries and is survived only by his wife, I authorize and empower my son to dispose of by his will during the life of his wife, and I direct said trustees to pay to such persons and in such proportions as my son shall thus designate in his will, the income to which he would be entitled under the next preceding paragraph, if living, and should he die intestate, I direct said trustees to pay such income to his wife during her life. Should my son be survived by a wife and/or a child or children, I direct said trustees to pay the income which my son, if living, would be entitled to under said preceding paragraph, to his wife during her life, and upon her death to his children, share and share alike. I authorize and empower my son, in case issue only

survive him to dispose of by his will to such issue, one-sixth of the principal of said residuary estate during the life of my wife and one-third thereof upon her death, upon condition, however, that the principal of any child's share shall not be distributed until such child reaches the age of twenty-five years, and I direct said trustees to pay over the income only, of the share of each such beneficiary as my son shall thus designate in his will, until such child shall reach the age of twenty-five years, and thereupon to convey, assign, transfer and deliver the principal of said share to such beneficiary. Should my son die intestate leaving issue only surviving him, I direct said trustees to pay the income to which my son would be entitled if living, to such issue in equal shares until each shall reach the age of twenty-five years, and as each of such children shall reach the age of twenty-five years, I direct said trustees to convey, assign, transfer and deliver to such child its proportionate share of one-sixth of the principal of said residuary estate during the life of my wife, and one-third thereof upon her death; the heirs of any deceased child of my son to take the share of such deceased parent.

"[7] I direct my trustees to pay to my mother, during the life of my wife, one-sixth of the net income of said residuary estate. Upon the death of my wife, I direct said trustees to pay one-third of said net income to my mother.

"[8] Upon the death of my mother, I direct said trustees to pay the net income of said residuary estate to which my mother is entitled at the time of her death, and in addition, upon the death of my wife, or thereafter, any and all other net income undisposed of by the terms of this will, in the following proportions, to wit, one-fourth to my brother

Raymond, one-fourth to my sister Anne, and one-half to my sister Julia, and, upon the death of my sister Julia, one-third each to my brother Raymond and my sister Anne, and one-sixth to William F. Hunt, husband of my sister Julia in case she shall appoint him such beneficiary in her last will, and one-sixth to Pearson Hunt, her son, but in default of such appointment, said aggregate one-third share shall be paid to the issue of my sister Julia until the death of the survivor of my sister and brother.

"[9] Upon the death of my brother, or of my sister Anne, survived by the other, I direct said trustees to pay the income to which such deceased brother or sister was entitled, to the issue of such deceased parent, share and share alike, until the death of the survivor of my sisters and brother.

"[10] Upon the death of the survivor of my sisters and brother, I direct said trustees to pay the total aggregate net income to which my sisters and brother would have been entitled if living, to the children, then surviving, of my sisters and brother, per capita and not per stirpes, share and share alike, and, in the event of and upon the death of each of said children who is then a beneficiary under this will, I direct and empower my trustees in each such event, to convey, assign, transfer and deliver sixty-five per cent. of all that share of the principal of said residuary estate from which such child was entitled to receive net income, to such beneficiary or beneficiaries as such child may designate in its last will, and if such child shall die intestate, then to its legal heirs, and I direct said trustees to convey, assign, transfer and deliver the remaining thirty-five per cent. of said share to Cornell University, located at Ithaca, in the State of New York to be applied and disbursed for the purposes and uses of said University as the

Trustees of said University in their discretion shall deem best, provided, however, that the first $5,000 accumulated from payments into said fund, shall be set aside by the Trustees of said University, and forever constitute a permanent fund to be invested and reinvested, the income of which shall be known as the Edward J. Pearson '83 Civil Engineering Prize, and in accordance with arrangements to be made by the Civil Engineering Faculty shall be awarded annually during the Spring Term of said University to that student in the Junior Class in the College of Civil Engineering of which I was a student, of said University, who shall be selected by his classmates and professors, each group having equal voting power, as best representing with equal weight to each, the best combination of (a) an all around engineering student as determined by academic records, (b) the most progressive in original research and investigation, (c) the best devotee of physical culture but regardless of whether he is or is not an athlete, and (d) the most successful and popular leader. After the sum of $5,000 for the above created prize has been accumulated, I direct that succeeding payments into said fund shall be applied toward the Leonard Pearson veterinary prize fund, until such fund amounts to $5,000."

In 1930, one-third of the residuary trust estate was transferred to the testator's widow pursuant to the provisions of paragraph 3, and from then until her death in 1951 the net income of the corpus remaining in the hands of the trustees was distributed one-half to the widow, one-fourth to the son Harlow and one-fourth to the brother and sisters of the testator or their assignee or issue. The market value of the principal fund left in the trust at the time of the widow's death was in excess of $900,000. The plain-

tiffs in this action are the trustees under the seventh article of the will.

Gertrude S. Pearson, the testator's widow, was a resident of the state of New York at the time of her death. She left a will which was admitted to probate in that state. Her will makes no specific reference to any power of appointment under the will of Edward A. Pearson. It does, however, leave the residue of her estate in trust for the benefit of her son Harlow and his children.

The questions upon which advice is sought are ten in number. They are set forth in the footnote.[1]

---

[1] "(a) Is the share of the residuary trust income now payable to decedent's son, Harlow S. Pearson, as measured by the original trust corpus (prior to the withdrawal of the one-third part thereof by Gertrude S. Pearson) one-third or one-sixth plus one-third? In other words, is said Harlow S. Pearson entitled to one-half of the net income from the present trust property or to three-fourths of the net income of the present trust property, or what is the share of income now payable to him?

"(b) Are the brother and sisters of said Edward J. Pearson, deceased, their appointees or issue, entitled to one-third or to one-sixth plus one-third of said net income as measured by the original trust corpus? In other words, are said brother and sisters, their appointees, or issue, entitled to one-half of the net income from the remaining trust property or to three-fourths of said net income, or what is the share of income now payable to them?

"(c) Is any part of the principal trust property immediately distributable and, if so, what part and to whom?

"(d) What part or share of the principal trust property is subject to each of the testamentary powers of appointment given to the following persons respectively:

"1. The said Harlow S. Pearson.

"2. The said Julia P. Hunt.

"3. The children of the decedent's brother and sisters named in said will.

"(e) What disposition is to be made of the principal trust share, the income from which is now payable to said Harlow S. Pearson, in the event that he dies leaving his wife, or his wife and children, surviving him? Does said share of principal property descend by intestacy in such case to the heirs-at-law of said decedent?

"(f) Does the reference to the 'wife' of decedent's son, Harlow S.

Questions (a) and (b) are, in effect: What share of the income of the trust fund is now payable to Harlow S. Pearson and what share to the brother and sisters of the testator or their representatives? Question (c) is whether any part of the principal of the trust fund is distributable at this time. These three questions will be considered together because they all involve a determination of what the testator meant by the term "said residuary estate" in the various paragraphs of article seventh. Did he in every instance mean the residuary estate as it came originally into the hands of the trustees or did he mean the fund left in the hands of the trustees from time to time after they had made payments to his widow in accordance with paragraph 3? Or, taking it one step further, when he refers to fractions of "said residuary estate," is he referring to fractions of the estate as it was when the trustees first took over or to fractions of the estate left with the trustees at the time any particular distribution of principal or income is directed to be made?

Pearson, in [Article] Seventh of said will mean such person who may be his lawful wife at the time of death of said Harlow S. Pearson?

"(g) Are the provisions in the will for the benefit of the children of the decedent's said brother and sisters, including the powers of appointment given to such children, invalid in view of the rule against perpetuities? If such interest[s] of such children are invalid, what is the effect of such invalidity upon other interests under the will and how are any such invalid interests in said property to be distributed?

"(h) What is the effect of [Article] Ninth of the will as it relates to this action and the interests of any of the parties hereto?

"(i) Are Anne Warner and Dorothy Warner, the adopted children of Elizabeth Warner, issue of the testator's sister, Anne P. Warner, within the meaning of [Article] Seventh of said will, as filed as Exhibit A?

"(j) On the death of the survivor of the testator's sisters and brother, do Anne Warner and Dorothy Warner, the adopted children of Elizabeth Warner, share in the fund as the legal heirs of said Elizabeth Warner, within the meaning of [Article] Seventh of the will, as filed as Exhibit A?"

The nature of the problem presented by these questions can be clarified by a brief statement of the claims made by the respective parties. Harlow S. Pearson claims that, under the will, the "said residuary estate" is a variable. That is to say, the will contemplates that, as the testator's widow by virtue of paragraph 3 drew various fractions of the estate up to one-third, the "residuary estate" would be reduced by the amounts so drawn and that thereafter the various fractions of the income to which the beneficiaries were entitled would be fractions of the income of what was left in the fund. This means, as claimed by this defendant, that after the widow, in 1930, drew one-third of the principal of the original residuary estate, she was still entitled, by virtue of, paragraph 1, to receive two-thirds of the income of the remaining two-thirds of the principal, and by virtue of paragraph 2 she had a power of appointment by her will over one-third of the principal then remaining in the hands of the trustees. This leads him to the position that, inasmuch as the widow failed to exercise the power of appointment by will granted to her by paragraph 2, one-third of the principal now remaining goes immediately to him as the sole heir at law of his mother by reasons of the directions contained in paragraph 4.

On the other hand, the position taken by all the other defendants is that, wherever the expression "said residuary estate" is used in article seventh, it means the corpus of the estate which came to the trustees originally and that, when the will refers to various fractions of the income of said residuary estate, it means fractions of the income of the original corpus. They say further that the provisions of paragraph 2, giving the widow the power of appointment by will over one-third of the income and

principal, and the provisions of paragraph 3, giving her the right during her lifetime to draw up to one-third of the principal, both relate to the same one-third of the original corpus. Accordingly, inasmuch as she drew the entire one-third of the residuary estate during her lifetime, there was nothing left to be subject to her power of appointment by will and consequently nothing left to go to Harlow S. Pearson as her heir at law under the provisions of paragraph 4. They therefore conclude that none of the principal estate is distributable at the present time.

In construing a will, a court must seek the intent expressed by the testator. *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643. If the language of the will expresses an intent in unambiguous terms, that intent may not be varied simply because it appears to the court that the testator must actually have intended otherwise. If, however, from the reading of the will as a whole the general testamentary plan appears, that, ordinarily, offers a valuable aid in the construction of the language used. *Budington* v. *Houck,* 134 Conn. 72, 76, 54 A.2d 671; *Bronson* v. *Pinney,* 130 Conn. 262, 269, 33 A.2d 322. In the present case, a recognition of the testator's general plan of disposition goes a long way toward understanding what the expressed intent of the testator was. This is particularly true because all the essential words used to dispose of the estate, when taken in their natural and accustomed meaning, are suitable to carrying out that plan.

There is no gainsaying that, upon first reading, article seventh seems very involved. This is owing in part to the fact that it is inartificially drawn and in part to the fact that the testator obviously had a desire to control the disposition of both the income and

the principal of his residuary estate over a long period of time and for the benefit of a large number of persons. When, however, the article is read with care, the testator's general testamentary scheme emerges with clarity. There were three groups of persons for whom he wished to provide: (1) his widow and those who might take under her, (2) his son and the son's representatives and (3) his mother, brother and sisters and their descendants and Cornell University. His plan was, therefore, to divide his residuary estate into three equal parts and to devote one of these parts to each of the groups. He desired, however, to provide income for his widow during her life in excess of the income of the one-third of his property which would be held for the benefit of the first group. Accordingly, he planned that his widow should receive not only the income from the one-third of the estate devoted to the first group but also one-third of the income from the entire estate and that this should be accomplished by limiting the income going to each of the other two groups to one-sixth of the income of his residuary estate.

It is apparent that if the interpretation urged by Harlow S. Pearson were adopted, it would, in large measure, frustrate this general testamentary scheme. If, after the widow had drawn some portion of the one-third share of the principal, she were to continue to receive a full two-thirds of the income from the fund left in the hands of the trustees, the result necessarily would be that the income going to the other two groups would be diminished. They would not thereafter each receive the one-half of the income from the full one-third share of the estate which the testator desired them to have. Furthermore, if, after the widow had drawn all of the principal which

by virtue of paragraph 3 she was entitled to withdraw, she still had a power of appointment by will over one-third of the property left in the possession of the trustees, the effect would be to reduce the one-third of the principal of the entire residuary estate which the testator had devoted to each of the other two groups by one-third. A construction which would bring about such results, so violative of the testamentary scheme, should not be adopted unless the express language of the will compels it.

So far from compelling the interpretation argued for by Harlow S. Pearson, the language of the will effectively expresses an intent to dispose of the testator's residuary estate in accordance with the testamentary scheme which we have recognized. The crucial words used throughout article seventh are "said residuary estate." In paragraph 1, the widow is given for life two-thirds of the income of "said residuary estate." In paragraph 2, she is given the power of appointment over one-third of the income or one-third of the principal of "said residuary estate." By paragraph 3, she is authorized to take not to exceed one-third of the principal of "said residuary estate." In paragraph 5, one-sixth of the income of "said residuary estate" during the widow's life, and thereafter one-third of the income of "said residuary estate," is bequeathed to the testator's son for life. Paragraph 6 controls the disposition of one-third of the income and principal after the death of the son, and, wherever it refers to some fraction of the income or principal, it speaks of the income or the principal of "said residuary estate." Likewise, in paragraph 7 and subsequent paragraphs which dispose of the one-third of the income and principal which is to go to the testator's mother, brother and sisters and their descendants and to

Cornell, wherever there is a reference to principal it is always in the words "said residuary estate."

Twelve times in the numbered paragraphs of article seventh and once in the opening paragraph the phrase "said residuary estate" is used. Such constancy of use must have significance. It indicates that wherever used the phrase always refers to the same thing. The effect of the inclusion in the phrase of the word "said" is continually to refer the reader back to the point at which he can find "residuary estate" defined. Following that process we come to the opening paragraph of article seventh. By that paragraph the testator bequeaths to the trustees "[a]ll the rest, residue and remainder of my estate" and then directs them as to how to pay the net income of "said residuary estate." Clearly, at this point the testator intended the phrase "said residuary estate" to mean all the rest, residue and remainder of his estate, which was to form the corpus of the trust initially. Since the phrase has that meaning when first used by the testator, it necessarily has the same meaning when subsequently used, because nowhere in the article has he defined it differently. Wherever he disposes of fractions of either the income or the principal of "said residuary estate," his intent is to dispose of fractions of the income or the principal, as the case may be, of the rest, residue and remainder of the corpus of his estate as it was when it first came into the trust and not of that corpus as it might be diminished by withdrawals by his widow.

Two arguments advanced by Harlow S. Pearson against the validity of this interpretation should be noted. The first is based upon the fact that the testator must have realized that the market value of the securities constituting his residuary estate would fluctuate in value during his widow's lifetime. Con-

sequently, if the widow drew her one-third of the principal at a time when market values were low, she would receive less in dollars and cents than she would if she made her withdrawals at a time when the market was higher. This result, Harlow S. Pearson says, the testator could not have intended. The answer to that argument lies in the fact that the testator contemplated that whatever principal was drawn by his widow would continue to be held as principal in her own account. Some evidence that this was in the mind of the testator is derived from the eighth article of the will. In that article he authorizes the trustees, in distributing any portion of "said residuary estate," to set out "such distributed portion in an equitable manner, giving due consideration to its market value and income." From this it is apparent that he expected that, whenever his widow should elect to take any portion of the principal to which she was entitled, distribution thereof to her would be made in specific securities and not in cash. In any event, the fraction of the principal of the residuary estate which the widow would draw, if it were thereafter held by her as principal, would fluctuate in market value in roughly the same proportion as though it had remained in the hands of the trustees. This would hold true whether she drew the entire one-third of the residuary estate at one time or drew fractional parts of that one-third at various different times and under varying market conditions. Accordingly, no injustice would result to her by reason of her having made the withdrawal of principal when the securities market was low, or to the other beneficiaries if she made her withdrawals when the market was high.

The second argument advanced by Harlow S. Pearson is based upon the provision contained in para-

graph 3 that, when the widow draws any of the principal, up to one-third of the residuary estate, "the residuary estate from which she shall be entitled to income and the residuary estate which she is empowered to dispose of under preceding paragraphs, shall thereby be reduced by an amount equivalent to the proportion taken by her under this paragraph." He claims that if the widow during her lifetime drew only a fraction of the one-third of the residuary estate, the quoted portion of paragraph 3 would be mathematically unworkable under an interpretation of the will which limited her drawing and her power of appointment to the same one-third of the estate. We have given careful consideration to this contention but can see no merit to it. Regardless of the portion of the principal the widow might draw, it would be mathematically feasible to work out the fraction of the income of the trust fund that she would be entitled to receive thereafter, as well as the fraction of the principal over which she would thereafter have the power of appointment

Neither of the arguments advanced by Harlow S. Pearson militates against the validity of our conclusion, already stated, that the phrase, "said residuary estate," whenever used in article seventh means the entire residuary estate forming the corpus of the trust as originally set up. From this conclusion it follows that the one-third of the principal devoted by paragraphs 2 and 3 to the benefit of the widow and her appointees would always remain constant in the sense that it would not be increased by diminution of the other two-thirds of "said residuary estate" whenever the widow withdrew a portion of it. Consequently, since she withdrew a full one-third of the principal of "said residuary estate," there was nothing left over which she could exercise her power

of appointment by will. The question whether her will was operative to exercise the power, which is discussed at length in some of the briefs, has, therefore, become academic and requires no further consideration.

Questions (a) and (b) of the reservation ask what proportion of the income shall now go to the son and to the siblings of the testator, respectively. Incidental to these questions is a problem which arises by reason of the peculiar provisions of paragraphs 5 and 7. In paragraph 5 the testator provides, in effect, that during the life of his wife his son shall receive one-sixth of the net income, "and upon the death of my wife and thereafter, one-third of the net income of said residuary estate." Substantially the same phraseology is contained in paragraph 7, bequeathing portions of the income to the testator's mother. The question is whether these paragraphs mean that after the death of the testator's widow each beneficiary named is to receive a total of one-third or a total of one-sixth plus one-third of the income. Inasmuch as after the death of the widow there would remain only two-thirds of the "said residuary estate," the question answers itself. It could not be that the two beneficiaries could each get one-third plus one-sixth of the income of "said residuary estate," because that would amount to more income than would be available for distribution.

With reference to questions (a), (b) and (c), we conclude that no part of the principal of the trust property is distributable at the present time, that for the immediate future one-half of the income of the trust fund now on hand should be paid to Harlow S. Pearson and one-half to the testator's siblings or their appointees or issue as provided in paragraphs 8, 9 and 10 of article seventh of the will.

Question (d) of the reservation, asking what portions of the estate are subject to powers of appointment by various persons as specified in the will, requires no considerable discussion.  Since we have already reached the conclusion that it was the intention of the testator that one-third of the income of "said residuary estate" should mean the income of one-third of the residuary estate which came originally to the trustees, it follows that the one-third of the income and principal over which Harlow S. Pearson now has the power of appointment by virtue of paragraph 6 is one-half of the income and principal now left in the trust.  It also follows that the children of the brother and sisters of the testator will have the power of appointment by will, as provided in paragraph 10, over 65 per cent of the other half of the fund now remaining in the trust.  Paragraph 8 gives to Julia P. Hunt only a limited power of appointment to her husband, William F. Hunt.  Inasmuch as he is now deceased, that power of appointment is extinguished.

Paragraph 6 relates to the ultimate disposition of the income and principal of the one-third (now one-half) of the trust fund of which the testator's son is given the benefit by paragraph 5.  It directs that if Harlow S. Pearson leaves only a wife surviving, then he may appoint by his will those who shall take the income during the life of his wife.  If he dies "survived by a wife and/or a child or children," then the income is to go to the wife during her life and, after her death, to the children in equal shares.  The paragraph goes on to provide that, "in case issue only survive him," Harlow S. Pearson is empowered to dispose of the principal by his will "to such issue" on certain conditions.  Again, it provides that if he dies without a will, leaving issue only surviving, the

principal ultimately goes to that issue. No provision is made for the disposition of the principal in the event that Harlow S. Pearson dies leaving a wife or a wife and children surviving. This situation gives rise to question (e), which asks what is to be done with the principal of this share in the event that Harlow S. Pearson dies leaving either a wife or a wife and children. The reference to a "wife" of Harlow S. Pearson in paragraph 6 also raises the question whether the reference is to his present wife or to the person who may be his lawful wife at the time of his death. This is the question propounded as question (f).

Answers to these questions are not necessary for the present guidance of the trustees in the execution of the trust. They will become necessary only in the event that Harlow S. Pearson dies leaving a wife surviving. At the present time he is married to the defendant Annabelle W. Pearson and has three minor children, the defendants Ann, Frances and Diana Pearson. He and his wife, however, are living separate and apart. There is, therefore, a substantial possibility that he will die with no wife surviving, or, if a wife does survive, that she will be a person not a party to this action. Under these circumstances, it would not be in accord with the policy of this court to answer questions (e) and (f) at this time. *Willis* v. *Hendry,* 127 Conn. 653, 660, 20 A.2d 375; *Trowbridge* v. *Townsend,* 112 Conn. 104, 114, 151 A. 345; *Gorham* v. *Gorham,* 99 Conn. 187, 195, 121 A. 349; *Eaton* v. *Eaton,* 88 Conn. 286, 291, 91 A. 196; *Russell* v. *Hartley,* 83 Conn. 654, 664, 78 A. 320; see *New Britain Trust Co.* v. *Stanley,* 128 Conn. 386, 392, 23 A.2d 142; *Hill* v. *Wright,* 128 Conn. 12, 19, 20 A.2d 388.

Question (g) relates to the provisions of paragraphs 8, 9 and 10 of the seventh article. These

paragraphs control the disposition of the one-third share of the original residuary estate, i.e., one-half of the trust fund now remaining which the testator devoted to his mother and collateral relatives. Summarized in general terms, they are as follows: After the death of the testator's mother, the trustees are to pay the income to his brother and two sisters in various shares. As each one of them dies, his or her share of the income is to go to his or her children subject to some qualifications not now material. This is to continue until the death of the survivor of the testator's brother and sisters. From that time on the income is to be paid to all the children of the brother and sisters then surviving in equal shares per capita for life. Upon the death of each of those children, the trustees are directed to transfer 65 per cent of the share of the principal from which that child was entitled to receive the income to such beneficiary as that child designates in his will or, if the child dies intestate, to his heirs at law.

The question propounded is whether the bequests to the appointees or heirs at law of the children of the testator's brother and sisters are void as violative of the rule against perpetuities. To resolve this question, it is necessary to determine whom the testator meant when he spoke of the children of his brother and sisters. If he meant to include children who might be born after his death, it is apparent that bequests to their appointees or heirs to take effect only on their deaths might not vest within a life in being and twenty-one years. The bequests, therefore, would violate the rule against perpetuities. If, on the other hand, when the testator spoke of children of his brother and sisters, he meant only the children that were in being when the will became effective, it is obvious that the powers of appointment given to

them would have to be exercised, if at all, within their respective lives. Although it is possible that their appointments might be so remote that they would be void, the grant of the powers is not violative of the rule against perpetuities, since the powers themselves would necessarily be exercised within lives in being at the testator's death. *Bartlett* v. *Sears,* 81 Conn. 34, 41, 70 A. 33; Gray, Rule Against Perpetuities (4th Ed.) § 510. If the powers were not exercised, the alternative bequests to the heirs of the children would necessarily vest at the end of lives in being at the testator's death and would not violate the rule.

At the time the will was drawn, the testator's brother Raymond had one child, Ruth Pearson Eakin. His sister, Anne Pearson Warner, had four children, Edward, Robert, Nathaniel and Elizabeth Warner. His sister, Julia Pearson Hunt, had one child, Pearson Hunt. The parties have stipulated that the testator believed that his brother and his sisters could not have any more children. Under these circumstances, we conclude that it was only the living children of his brother and sisters to whom the testator referred and that, therefore, the bequests of the powers of appointment and the alternative bequests to the heirs of those children are valid. A construction of a will which invalidates a bequest as an illegal perpetuity is to be avoided if the language used is fairly open to an interpretation which would make the gift valid. *Bridgeport-City Trust Co.* v. *Alling,* 125 Conn. 599, 601, 7 A.2d 833; *St. John* v. *Dann,* 66 Conn. 401, 405, 34 A. 110.

The bequest to Cornell University is valid for the same reason as well as for the reasons that it vested on the testator's death with only its enjoyment postponed and that it is a bequest to a charity. See

*Bridgeport-City Trust Co.* v. *Lister,* 140 Conn. 147, 152, 98 A.2d 811; *Budington* v. *Houck,* 134 Conn. 72, 75, 54 A.2d 671; *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 276, 161 A. 341; *Brooks Bank & Trust Co.* v. *Beers,* 120 Conn. 477, 481, 181 A. 391; *City National Bank* v. *Bridgeport,* 109 Conn. 529, 544, 147 A. 181; General Statutes § 7082.

Questions (i) and (j) relate to Anne C. Warner and Dorothy J. Warner, who are the adopted children of Elizabeth Warner, one of the children of Anne P. Warner, sister of the testator. The adoptions occurred long after the death of the testator. Elizabeth Warner is now deceased. Paragraph 9 of the seventh article provides that, upon the death of the testator's brother or his sister Anne and pending the death of the survivor of his sister and brother, the share of the income which had been going to the one deceased goes to his or her "issue." Question (i) is whether the two children adopted by Elizabeth Warner are "issue" of Anne P. Warner within the meaning of this paragraph. Primarily, "issue" signifies descendants of the body, and it will not be construed to include adopted children unless the circumstances clearly indicate that the testator so intended. *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 472, 17 A.2d 517. There is nothing in the present case to indicate that the testator had any such intention. The adopted children are not the issue of Anne P. Warner.

Question (j) is whether, on the death of the survivor of the testator's sisters and brother, these adopted children will share in the fund as heirs of Elizabeth Warner, their adoptive mother. If they had any claim to take, it would have to be by virtue of paragraph 10, and then as possible appointees of their adoptive mother or as her heirs at law. This claim, however, could not be sustained. By the terms

of paragraph 10, only the children of the testator's brother and sisters who survive the last of the brother and sisters to die take any share of the income, and consequently only their appointees or heirs at law take any share of the principal. Elizabeth Warner, the adoptive mother of Anne C. Warner and Dorothy J. Warner, has already died, and her mother, the testator's sister, is still alive. Accordingly, Elizabeth Warner can take no share of the income of the fund after the death of the survivor of the testator's siblings, and therefore her heirs at law can take no part of the principal.

One final question remains for consideration. Article ninth of the will provides that if any beneficiary institutes or is a party to any litigation involving the validity of the will or involving any of the bequests, the bequest to that beneficiary becomes void. Question (h) as propounded asks what the effect of this provision is as it relates to this action and the interests of any of the parties hereto. On the authority of *Griffin* v. *Sturges,* 131 Conn. 471, 477, 40 A.2d 758, we conclude that it has no effect.

Questions (e) and (f) will not be answered. We answer the remaining questions as follows: (a) The share of the income now payable to Harlow S. Pearson is one-half of the income of the fund now left in the hands of the trustees. (b) The brother and sisters of the testator and their representatives as defined in paragraphs 8 and 9 of the seventh article of the will are, as a group, entitled to one-half of the income of the trust fund and now in the hands of the trustees. (c) No. (d) (1) One-half of the corpus of the trust now remaining. (d) (2) None. (d) (3) Sixty-five per cent of one-half of the corpus of the trust now remaining. (g) They are not invalid. (h) Article ninth has no effect as it relates to this action. (i) No. (j) No.

358

No costs in this court will be taxed in favor of any party.

In this opinion the other judges concurred.